THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

CHRISTOPHER LARS LOFGREN,

Plaintiff,

v.

POLARIS INDUSTRIES INC.,

Defendant.

Civil No.: _____

JURY DEMANDED

## COMPLAINT

COMES NOW the Plaintiff by and through his lawyers Lannom & Williams, PLLC, Kreindler & Kreindler LLP, and Michael D. Allweiss, P.A. who state the following:

## INTRODUCTION

1.    On June 30, 2015, at approximately 2:30 P.M., plaintiff Christopher Lars Lofgren, a twenty-five year old West Point Cadet, was operating a Polaris MRZR-4 all-terrain vehicle ("ATV") bearing bumper number 2D3R (the "Subject MRZR") during a routine familiarization course when its suspension system, seat and/or restraint system failed causing injury to his spine that rendered him a paraplegic.

1

## JURISDICTION AND VENUE

2.     Plaintiff Christopher Lars Lofgren is a domiciliary of the state of California and resident of the State of New York.

3.     Defendant Polaris Industries Inc. is a corporation organized under the laws of Delaware, having its headquarters and principal place of business in Medina, Minnesota, and engaging in business in Tennessee. It is a resident and domiciliary of both Delaware and Minnesota.

4.     Plaintiff alleges damages greater than the jurisdictional amount of $75,000.

5.     Subject matter jurisdiction of this Court is based on complete diversity pursuant to 28 U.S.C. § 1332.

6.     Venue in this District satisfies the requirements of 28 U.S.C. § 1391, in that a substantial part of the events or omissions giving rise to the claim occurred in this District and Polaris is subject to personal jurisdiction in this District because it conducts longstanding and continuous business in Tennessee.

## ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF

7.     Upon information and belief, Defendant Polaris designed, manufactured, assembled, tested, set, configured, marketed, sold and provided warnings, cautions, bulletins, alerts and other product safety information concerning the Subject MRZR.

2

8.    On June 30, 2015, the Subject MRZR was a brand new 2015 Polaris MRZR-4 ATV assigned bumper number 2D3R by the United States Army.  The Polaris MRZR model, including the subject MRZR, is an off-the-shelf version of the RZR ATV manufactured by Polaris for use by the military but available for sale and use by the general public.

9.    Upon information and belief, prior to June 30, 2015, Polaris failed to, among other things, properly set the suspension of the Subject MRZR to the required specifications.  The suspension system for the Subject MRZR is controlled by separate click wheels for each wheel that loosens or tightens the suspension.  The more clicks the wheels are turned from closed towards open, the looser the suspension. The specifications for the Subject MRZR require the suspension to be set 2-4 clicks from closed.  However, the Subject MRZR's suspension was set to 10 clicks from closed resulting in a suspension that was much more prone to "bottoming out".

[*Remainder of Page Intentionally Left Blank*]

3



**Figure 1 Exemplar Polaris MRZR-4**

10. On June 30, 2015, Mr. Lofgren was a twenty-five year-old Cadet preparing to enter his final year at the United States Military Academy at West Point. Mr. Lofgren was training with the United States Army's 5th Special Forces Group operating out of Fort Campbell in Tennessee as part of the Cadet Troop Leadership Training course, which is part of every cadet's West Point education.

11. On June 30, 2015, as part of his Cadet Troop Leadership Training with the 5th Special Forces Group, Mr. Lofgren was participating in a familiarization course for the MRZR-4.

12. Upon information and belief, prior to operating the Subject MRZR, Mr. Lofgren completed the prerequisite Recreational Off-Highway Vehicle Association

online course developed by Polaris as well as the ROV Basic Driver Course, which provided instruction on how to operate the Subject MRZR.

13.    On or about 2:30 P.M. on June 30, 2015, Mr. Lofgren was operating the Subject MRZR on range 51E on the Tennessee side of Fort Campbell in Stewart County.

14.    Upon information and belief, on June 30, 2015, range 51E had berms located approximately every 100 meters.

15.    On or about 2:30 P.M. on June 30, 2015, Mr. Lofgren operated the Subject MRZR in a file formation with two other MRZRs.

16.    On or about 2:30 P.M. on June 30, 2015, Mr. Lofgren operated the Subject MRZR over a berm located at approximately 200 meters  down range (the "subject berm").  As the Subject MRZR negotiated the berm, its suspension bottomed out, and the driver's seat, in which Mr. Lofgren was located, failed.

17.    On or about 2:30 P.M. on June 30, 2015, Mr. Lofgren operated the Subject MRZR in a foreseeable and intended manner at the same reasonable speed as the other MRZRs involved in the familiarization training and approached the subject berm in a similar manner as the other MRZRs involved in the familiarization training.

18.    As a result of the failure of the Subject MRZR's suspension, driver's seat, and/or restraint system, Lars Lofgren's spine was broken and he was rendered a

5

paraplegic.

19.     As a direct and proximate result of the acts and/or omission of Defendant Polaris, Mr. Lofgren has and will continue to suffer severe emotional and physical pain, significant medical and other healthcare expenses, significant lost earnings and lost earning capacity, and any such other damages allowed by applicable law.

20.     The failures in the design, manufacture, assembly, testing, setting, and/or configuring of the Subject MRZR, and the resulting damages described herein, were a direct, foreseeable, legal and proximate result of the negligent, reckless, and/or wanton acts and/or omissions of Defendant Polaris, and entitle Plaintiff to an award of compensatory and/or punitive damages, in an amount in excess of $75,000.

## CAUSES OF ACTION

### Count I
### Negligence

21.     The allegations in paragraphs 1 to 20 above are adopted and incorporated by reference herein.

22.     At all relevant times, including on June 30, 2015, Polaris owed a duty of reasonable care in designing, manufacturing, assembling, testing, setting, configuring, marketing, selling, distributing, and/or issuing instructions, procedures and/or warnings for the Subject MRZR, including its component systems and parts, so that it was safe for its foreseeable and intended use by purchasers and users of the Subject MRZR,

6

including Mr. Lofgren.

23.     The Defendants negligently and/or recklessly breached their duties of care by failing to exercise reasonable care under the circumstances, including, but not limited to the following negligent and/or reckless acts or omissions:

a.      designing and/or manufacturing the Subject MRZR in a manner that unreasonably and dangerously departed from a safe design in that it failed to safely absorb the energy from reasonably expected use of the Subject MRZR in a manner that failed to prevent injury to occupants;

b.      designing and/or manufacturing the Subject MRZR's driver's seat with materials that were inadequate to absorb energy from reasonably expected use of the Subject MRZR such that it failed to prevent injury to occupants;

c.      designing and/or manufacturing the Subject MRZR's restraint harness so that it, among other things, attached above the shoulders of the occupant in a manner that was inadequate to safely restrain an occupant and prevent injury to that occupant during reasonably expected use of the Subject MRZR;

d.      designing and/or manufacturing the Subject MRZR's suspension

7

so that it was set to a stiffness that was inadequate to safely absorb energy from reasonably expected use of the Subject MRZR such that it failed to prevent injury to occupants;

e.     designing the Subject MRZR, including its driver's seat, restraint harness, and/or suspension, in a manner that unreasonably departed from the standards used in the ATV industry in that it failed to adequately protect occupants from the energy associated with reasonably expected use of the Subject MRZR;

f.     failing to incorporate available technology and/or art into the Subject MRZR's driver's seat design, including but not limited to, a different seat frame shape and or a properly absorbent foam seat cushion as exist in other RZR models available to the general public, that would have safely absorbed the energy from reasonably expected use of the Subject MRZR such that it would have prevented injury to occupants;

g.     Failing to incorporate available technology and/or art into the Subject MRZR's restraint harness, including but not limited to upper attachment points below the occupant's shoulder and/or a five point design, that would have safely absorbed the energy from

8

reasonably expected use of the Subject MRZR such that it would have prevented injury to occupants;

h.      failing to otherwise incorporate available technology and/or art into the Subject MRZR that would have safely absorbed the energy from reasonably expected use of the Subject MRZR such that it would have prevented injury to occupants;

i.      failing to select and/or use a driver's seat in the Subject MRZR that was capable of safely absorbing the energy from reasonably expected use of the Subject MRZR in a manner that would have prevented injury to occupants;

j.      failing to select and/or use a restraint harness in the Subject MRZR that was capable of safely restraining an occupant during the reasonably expected use of the Subject MRZR in a manner that would have prevented injury to occupants;

k.      failing to select and/or use other components capable of safely absorbing the energy from reasonably expected use of the Subject MRZR in a manner that would have prevented injury to occupants;

l.      selecting, incorporating and/or assembling component parts and/or systems of the Subject MRZR, including but not limited to its

driver's seat, restraint harness and/or suspension, in a manner that unreasonably and dangerously departed from a safe design such that it failed to safely absorb the energy from reasonably expected use of the Subject MRZR such that it would have prevented injury to occupants;

m.  configuring, setting, testing and/or inspecting the Subject MRZR's suspension in a manner that departed from the manufacturer's specifications such that the stiffness of the suspension was inadequate to safely absorb the energy from reasonably expected use of the Subject MRZR and inadequate to prevent injury to occupants;

n.  configuring, setting, testing and/or inspecting the Subject MRZR and/or its component parts and/or systems in a manner that unreasonably and dangerously departed from a safe design such that it failed to safely absorb the energy of reasonably expected use of the Subject MRZR such that it would have prevented injury to occupants;

o.  failing to detect that the construction and composition of the Subject MRZR and/or its component parts, including but not

10

limited to its driver's seat, restraint harness and/or suspension, deviated in a material way from the manufacturer's specifications, performance standards, and/or from otherwise identical model MRZRs at the time the product left Polaris' control;

p.    failing to adequately address and/or remedy a known risk of the MRZR bottoming out and/or otherwise failing to safely absorb the energy from reasonably expected use of the Subject MRZR such that it would have prevented injury to occupants;

q.    failing to properly support the Subject MRZR post-sale and/or post-distribution by remedying the dangerous conditions posed by the design, manufacture, assembly, testing, and/or configuring of the Subject MRZR, including but not limited to is driver's seat, restraint harness, and/or suspension, which failed to safely absorb the energy from reasonably expected use of the Subject MRZR in a manner that would have prevented injury to occupants;

r.    failing to adequately warn of the characteristics of the Subject MRZR that presented a risk of injury to occupants due to failure to properly absorb energy forces;

11

s. failing to warn users of the Subject MRZR of the risk of injury to occupants due to a failure to properly absorb energy forces in the event of a component part failure, including but not limited to a failure of the Subject MRZR's driver's seat, suspension, and/or restraint system;

t. failing to adequately warn users of the Subject MRZR of the likelihood of a failure to absorb the energy from reasonably expected use of the Subject MRZR, which could result in injury to occupants, given the Subject MRZR's designed after it was sold, even after the risks of such failure came to Polaris' attention;

u. failing to adequately warn users of the Subject MRZR of what are the unsafe and dangerous conditions of use of the Subject MRZR and of the limitations of the Subject MRZR;

v. failing to provide adequate instructions for safe operation of the Subject MRZR; and

w. taking and/or failing to take any and all other actions to be proven through discovery or at the trial of this matter, which were in the contravention of the exercise of due care, and reasonable prudence.

24. As the direct and proximate result of one or more of the aforesaid

12

negligent and/or reckless acts or omissions of Polaris, in breach of its duty owed, the Subject MRZR was caused to, and did fail in a manner that resulted in Lars Lofgren's injuries and damages.

## Count II
### Strict Liability

25.    The allegations in paragraphs 1 to 24 above are adopted and incorporated by reference herein.

26.    Prior to June 30, 2015, Polaris manufactured and/or sold the Subject MRZR.

27.    At that time it manufactured and/or sold the Subject MRZR, Polaris was engaged in the business of, and still is engaged in the business of, manufacturing and selling the Subject MRZR.

28.    Lars Lofgren was a reasonably foreseeable user of the Subject MRZR.

29.    The Subject MRZR was expected to and did reach Lars Lofgren without a substantial change in its condition, and, on June 30, 2015, the Subject MRZR was in substantially the same condition as when it left the control of Polaris.

30.    At all relevant times, and on June 30, 2015, Lars Lofgren was operating the Subject MRZR as intended, and was using it in the manner for which it, and its component systems and parts, were designed, manufactured, selected, assembled,

13

tested, distributed, and intended to be used, and in a manner foreseeable to Polaris as designer and manufacturer of the Subject MRZR.

31.     The Subject MRZR was defective or unreasonably dangerous at the time of sale because it:

   a.     the Subject MRZR failed to safely absorb the energy from reasonably expected use of the Subject MRZR in a manner that would prevent injury to occupants;

   b.     the Subject MRZR's driver's seat was designed with and utilized materials that were inadequate to absorb energy from reasonably expected use of the Subject MRZR such that it failed to prevent injury to occupants;

   c.     the Subject MRZR's restraint harness was designed so that it, among other things, attached above the shoulders of the occupant in a manner that was inadequate to safely restrain an occupant and prevent injury to that occupant in the event of an impact during reasonably expected use of the Subject MRZR;

   d.     the Subject MRZR's suspension was designed so that it was set to stiffness that was inadequate to safely absorb the energy from reasonably expected use of the Subject MRZR such that it failed to

14

prevent injury to occupants;

e.    the Subject MRZR, including its driver's seat, restraint harness, and/or suspension, was designed in a manner that unreasonably departed from the standards used in the ATV industry in that it failed to adequately protect occupants from the energy from reasonably expected use of the Subject MRZR;

f.    the Subject MRZR's driver's seat failed to incorporate available technology and/or art, which was technologically and economically feasible, including but not limited to, a different seat frame shape and or a properly absorbent foam seat cushion as exist in the other RZR models available to the general public, that would have safely absorbed the energy from reasonably expected use of the Subject MRZR such that it would have prevented injury to occupants;

g.    the Subject MRZR's restraint harness failed to incorporate available technology and/or art, which was technologically and economically feasible, including but not limited to upper attachment points below the occupant's shoulder and/or a five point design, that would have safely absorbed the energy from

15

reasonably expected use of the Subject MRZR such that it would have prevented injury to occupants;

h.    the Subject MRZR otherwise failed to incorporate available technology and/or art, which was technologically and economically feasible, that would have safely absorbed the energy from reasonably expected use of the Subject MRZR such that it would have prevented injury to occupants;

i.    the construction and composition of the Subject MRZR and/or its component parts, including but not limited to its driver's seat, restraint harness and/or suspension, deviated in a material way from the manufacturer's specifications, performance standards, and/or from otherwise identical model MRZRs at the time the product left Polaris' control;

j.    lacked proper and adequate warnings of the unsafe and dangerous conditions of use of the Subject MRZR and of the limitations of the Subject MRZR;

k.    lacked proper and adequate instructions for safe operation of the Subject MRZR;

16

l.     lacked proper and adequate warnings of the characteristics of the Subject MRZR that presented a risk of injury to occupants due to failure to properly absorb energy forces;

m.    lacked proper and adequate warnings to users of the Subject MRZR of the risk of injury to occupants due to failure to properly absorb energy forces in the event of a component part failure, including but not limited to a failure of driver's seat;

n.    lacked proper warnings to users of the Subject MRZR of the likelihood of a failure to absorb the energy from reasonably expected use of the Subject MRZR, which could result in injury to occupants, given the Subject MRZR's designed after it was sold, even after the risks of such failure came to Polaris' attention; and

o.    the Subject MRZR suffered from some other defect in design, manufacture and/or warning that rendered the product unreasonably dangerous for its normal or intended use to be proven through discovery or at the trial of this matter.

32.    For the reasons cited in paragraph 31 above, the Subject MRZR was defective or unreasonably dangerous to a person who used or might reasonably be expected to use it.

17

33.     As a direct and proximate result of the defective and unreasonably dangerous nature of the Subject MRZR, which was the result Polaris's reckless and wanton conduct, Lars Lofgren was injured and suffered damages and losses as previously alleged.

## Count III
## Breach of Warranty

34.     The allegations in paragraphs 1 to 33 above are adopted and incorporated by reference herein.

35.     Polaris is a merchant engaged in the business of designing, manufacturing, assembling, testing, setting, configuring, supplying, marketing, selling, distributing, and/or supporting the Subject MRZR.

36.     Polaris described and advertised the MRZR for sale.  Such descriptions and advertisements included, but were not limited to, advertising brochures, website, instructions, manuals, graphs, specification sheets, and other product statements. These descriptions and affirmations concerning the MRZR resulted in express and/or implied warranties that the MRZR would perform as described and was safe for its intended use.

37.     These descriptions, affirmations, and implied and/or express warranties regarding the MRZR became part of the bases of the bargain of its sale, and said warranties ran to Lars Lofgren as a user of the Subject MRZR in the military.

18

38.     Through their sales activities the Polaris impliedly warranted that the Subject MRZR was fit for its intended purpose, properly labeled and packaged for sale and installation, and conformed to the promises and affirmations of fact made on its containers and labels.  These implied warnings ran to Lars Lofgren as a user of the Subject MRZR in the military.

39.     Through their sales activities the Polaris impliedly warranted that their goods were fit for their particular purpose, and knew that its skill and judgment would be relied upon and were in fact relied upon by the purchaser of their individual goods. These implied warranties ran to Lars Lofgren as a user of the Subject MRZR in the military.

40.     The Defendants' statements that the Subject MRZR was not defective and was safe for its intended use were false in that the Subject MRZR was unreasonably dangerous in that:

> a.     the Subject MRZR failed to safely absorb the energy from reasonably expected use of the Subject MRZR in a manner that would prevent injury to occupants;
>
> b.     the Subject MRZR's driver's seat was designed with and utilized materials that were inadequate to absorb energy from reasonably expected use of the Subject MRZR such that it failed to prevent

19

injury to occupants;

c.  the Subject MRZR's restraint harness was designed so that it, among other things, attached above the shoulders of the occupant in a manner that was inadequate to safely restrain an occupant and prevent injury to that occupant in the event of an impact during reasonably expected use of the Subject MRZR;

d.  the Subject MRZR's suspension was designed so that it was set to stiffness that was inadequate to safely absorb the energy from reasonably expected use of the Subject MRZR such that it failed to prevent injury to occupants;

e.  the Subject MRZR, including its driver's seat, restraint harness, and/or suspension, was designed in a manner that unreasonably departed from the standards used in the ATV industry in that it failed to adequately protect occupants from the energy from reasonably expected use of the Subject MRZR;

f.  the Subject MRZR's driver's seat failed to incorporate available technology and/or art, which was technologically and economically feasible, including but not limited to, a different seat frame shape and or a properly absorbent foam seat cushion as exist

20

in the other RZR models available to the general public, that would have safely absorbed the energy from reasonably expected use of the Subject MRZR such that it would have prevented injury to occupants;

g.    the Subject MRZR's restraint harness failed to incorporate available technology and/or art, which was technologically and economically feasible, including but not limited to upper attachment points below the occupant's shoulder and/or a five point design, that would have safely absorbed the energy from reasonably expected use of the Subject MRZR such that it would have prevented injury to occupants;

h.    the Subject MRZR otherwise failed to incorporate available technology and/or art, which was technologically and economically feasible, that would have safely absorbed the energy from reasonably expected use of the Subject MRZR such that it would have prevented injury to occupants;

i.    the construction and composition of the Subject MRZR and/or its component parts, including but not limited to its driver's seat, restraint harness and/or suspension, deviated in a material way

21

from the manufacturer's specifications, performance standards, and/or from otherwise identical model MRZRs at the time the product left Polaris' control;

j.   lacked proper and adequate warnings of the unsafe and dangerous conditions of use of the Subject MRZR and of the limitations of the Subject MRZR;

k.   lacked proper and adequate instructions for safe operation of the Subject MRZR;

l.   lacked proper and adequate warnings of the characteristics of the Subject MRZR that presented a risk of injury to occupants due to failure to properly absorb energy forces;

m.   lacked proper and adequate warnings to users of the Subject MRZR of the risk of injury to occupants due to failure to properly absorb energy forces in the event of a component part failure, including but not limited to a failure of driver's seat;

n.   lacked proper warnings to users of the Subject MRZR of the likelihood of a failure to absorb the energy from reasonably expected use of the Subject MRZR, which could result in injury to occupants, given the Subject MRZR's designed after it was sold,

22

even after the risks of such failure came to Polaris' attention; and

o.   the Subject MRZR suffered from some other defect in design, manufacture and/or warning that rendered the product unreasonably dangerous for its normal or intended use to be proven through discovery or at the trial of this matter.

41.   As a result, Polaris' statements, descriptions and affirmations that the Subject MRZR would perform as described and was safe for its intended use were actually false.

42.   Consequently, Polaris breached their express warranties and the implied warranties of merchantability and fitness for particular purpose and the implied warranties arising from the course of dealings and usage of trade.

43.   As a direct result of the foregoing breach of warranties, the Subject MRZR failed and caused Lars Lofgren's injuries and paraplegia.

44.   As a direct and proximate result of Polaris' breach of warranty, Lars Lofgren suffered injuries, damages, and losses as previously alleged.

**Count IV**
**Constitutional Challenge**

45.   The allegations in paragraph 1 to 44 above are adopted and incorporated by reference herein.

23

46.     Plaintiff respectfully submits that Plaintiff's non-economic damages (as defined in Tenn. Code Ann. § 29-30-101(2)) exceed $1,000,000. To the extent that the qualified jurors of this community agree with Plaintiff's assessment and deem it appropriate, given the facts and the law, to award non-economic damages to Plaintiff in an amount in excess of $1,000,000, the Court may be called upon by Defendant to reduce the jury's verdict for non-economic damages to $1,000,000 under Tenn. Code Ann. § 29-39-102(e) and (g).

47.     Plaintiff further respectfully submits, as set forth below in his prayer for relief, that Plaintiff is entitled to an award of punitive damages in the amount of $10,000,000. To the extent that the qualified jurors of this community agree with Plaintiff's assessment and deem it appropriate, given the facts and law, to award punitive damages to the Plaintiff, the Court may be called upon by Defendant to reduce the jury's verdict for punitive damages under Tenn. Code Ann. § 29-39-104(a)(5) and (a)(6).

48.     Any reduction of the jury's verdict pursuant to Tenn. Code Ann. § 29-39-102 and/or § 29-39-104, whether sought by the defendant or by act of the Court *sua sponte* or on motion would violate the following constitutional provisions: Article I, Section 6 of the Constitution of Tennessee; Article I, Section 8 of the Constitution of Tennessee; Article I, Section 17 of the Constitution of Tennessee;

24

Article I, Section 23 of the Constitution of Tennessee; Article II, Section 1 of the Constitution of Tennessee; Article II, Section 2 of the Constitution of Tennessee; Article VI, Section 1 of the Constitution of Tennessee; Article XI, Section 16 of the Constitution of Tennessee; the equal protection and due process guarantees afforded to all individuals, including Plaintiff, under the Constitution of Tennessee and the Constitution of the United States of America; and the right to trial by jury secured by the Seventh Amendment to the Constitution of the United States.

49.     Thus, Plaintiff asks that the Court find and declare that Tenn. Code Ann. § 29-39-102 (e) and (g) and/or Tenn. Code Ann. § 29-39-104(a)(5) and (a)(6) violate one or more of the aforementioned constitutional provisions, are invalid as a matter of law, and can serve as no limitation whatsoever on entry of judgment for the damages and losses sustained by Plaintiff, as determined by the jurors selected by the parties and empanelled by the Court in this cause.

50.     Notice of this action will be mailed to the Attorney General of the State of Tennessee consistent with Tenn. R. Civ. P. 24.

## DEMAND

**WHEREFORE**, the Plaintiff prays unto the court that he have and recover judgment against Polaris as follows:

1.     That Polaris be served with process and be required to answer within the

25

time prescribed by law;

2.     That Plaintiff be awarded a judgment against Polaris in a fair and reasonable amount to be determined by a jury in excess of the sum of Seventy-Five Thousand and 00/100 Dollars ($75,000.00) for all elements of compensatory damages for the injuries to Lars Lofgren, including but not limited to damages for physical pain and mental suffering, lost earnings and earning capacity, as well as any and all such further incidental and/or other damages incurred or suffered by Lars Lofgren.

3.     For an award of punitive damages against Polaris.

4.     Pursuant to T.C.A. Section 29-28-107 and only because said statute requires such, the Plaintiff states that he is seeking an amount of $20,000,000.00 in compensatory damages, and $10,000,000.00 in punitive damages.

5.     That the Court find and declare that Tenn. Code Ann. § 29-39-102(e) and (g) and/or Tenn. Code Ann. § 29-39-104(a)(5) and (a)(6) violate one or more constitutional provisions of the Tennessee and/or U.S. Constitutions, are invalid as a matter of law, and can serve as no limitation whatsoever on entry of judgment for the damages and losses sustained by Plaintiff, as determined by the jurors elected by the parties empanelled by the Court in this cause.

6.     For both pre judgment and post judgment interest and for the costs of this action.

26

7.     That a jury of six (6) be impaneled to try this cause.

8.     For such other and further relief as to which the Court may deem to be
just and proper.

Respectfully Submitted,

LANNOM & WILLIAMS, PLLC

 /s/ *B. Keith Williams*
B. KEITH WILLIAMS, #16339
JAMES R. STOCKS, #25850
Attorneys for Plaintiff
137 Public Square
Lebanon, TN 37087
(615) 444-2900 - phone
(615) 444-6516 - fax
keithwilliams@lannomwilliams.com
jimstocks@lannomwilliams.com

-and-

*Pending admission pro hac vice,*

KREINDLER & KREINDLER, LLP

/s/ *Daniel O. Rose*
DANIEL O. ROSE
EVAN KATIN-BORLAND
Attorneys for Plaintiff
750 Third Avenue
New York, NY 10017
(212) 687-8181 - phone
(212) 972-9432 - fax
drose@kreindler.com
ekatinborland@kreindler.com

27

-and-

MICHAEL D. ALLWEISS, P.A.

/s/ *Michael D. Allweiss*
MICHAEL D. ALLWEISS
Attorney for Plaintiff
913 31st Terrace NE
St. Petersburg, FL 33704
(727) 827-4944 – phone
mallweiss@aol.com

I, B. Keith Williams, am surety for all of the costs of this cause.

/s/ *B. Keith Williams*
B. Keith Williams