IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| CHRISTOPHER LARS LOFGREN | ) | |
| | ) | |
| v. | ) | NO. 3:16-2811 |
| | ) | Crenshaw/Holmes |
| POLARIS INDUSTRIES, INC. | ) | |

**O R D E R**

This matter is before the Court on a motion by Plaintiff, Christopher Lars Lofgren ("Plaintiff" or "Lofgren"), requesting that Defendant, Polaris Industries, Inc. ("Defendant" or "Polaris"), be precluded from using a document purporting to be an unredacted portion of a Ground Accident Investigation Report ("Safety Board Report") in discovery or at trial and that Defendant be sanctioned for its prior conduct related to the Safety Board Report.[1] (Docket No. 49).

The Court has reviewed and considered the motion, the parties' respective responsive filings, and exhibits and declarations appended to the filings. For the reasons below, Plaintiff's motion is GRANTED in part and DENIED in part.[2]

**I. BACKGROUND**

This case arises out of an incident involving the June 30, 2015 injury of Plaintiff at Fort Campbell in Tennessee while he was driving a vehicle manufactured by Defendant. (Docket No. 1 at 5). In response to the subject incident, the United States Department of the Army ("Army") conducted two investigations. The first investigation proceeded under Army Regulation 15-6 (*see*

---

[1] To maintain consistency with the parties' filings, unless otherwise noted, the Court will refer to the "Ground Accident Investigation Report" as the "Safety Board Report."

[2] Other matters are pending as well. Any pending matters not addressed herein that were referred to the undersigned Magistrate Judge will be addressed by separate order.

Docket No. 52-2 at 6-7), a general investigatory regulation, which resulted in an AR 15-6 report (Docket No. 52-2 at 1-5) that was authorized for release and produced by the Army in this litigation, not subject to any privilege.[3] Later, an accident investigation followed under the provisions of Army Regulation 385-10 (*see* Docket No. 52-3 at 24), the purpose of which is to investigate all accidents to prevent future occurrences. A.R. 385-10 § 3-2. This investigation resulted in a 385 Ground Incident Report, also referred to as a Safety Board Report (Docket No. 52-3), a portion of which is at issue here.

Counsel for Plaintiff attempted to obtain a copy of the Safety Board Report on February 1, 2017 by submitting a request for the document in accordance with the Army's *Touhy* regulations. (Docket No. 65-3). In response, the Army requested that the parties submit a joint *Touhy* request. (Docket No. 65 at 5). The parties followed up by submitting a joint *Touhy* request on February 10, 2017 asking for, among other things, "[a] complete and unredacted copy of the Safety Report." (Docket No. 49-2).

The Army, via legal counsel, responded to the parties' *Touhy* request on July 26, 2017 by producing a redacted copy of the Safety Board Report. (Docket Nos. 52-3 and 65-6). The accompanying email stated that "[a]ll redacted material was privileged safety information redacted pursuant to Department of Defense Instruction 6055.07 and Army Regulation 385-10." (Docket No. 65-6). Importantly, the document contained a heavily redacted section titled "Findings and Recommendations Case Number 20150630." (Docket No. 52-3 at 10).

Defendant contends that, at some point after the incident but prior to the lawsuit, a Polaris employee, whose regular job responsibilities include acting as a point of contact between the Army

---

[3] The AR 15-6 Investigation Report was however marked confidential for discovery purposes, and placed under seal in this case because it contains the names and identifying information of members of the military, as well as export controlled design information relating to the subject vehicle.

and Defendant about Polaris military products generally, inquired of the U.S. Special Operations Command whether any reports of the Lofgren incident were available. (Declaration of Jed Leonard, Docket No. 65-2 at ¶¶ 2-5). Defendant further contends that, at a later unspecified date, but still before the present litigation began, the Polaris employee received an envelope containing an unredacted document, the first page of which has no official heading and begins with "Findings and Recommendations Case Number 20150630."[4] (*Id.* at ¶ 6). The envelope displayed no return address and included no cover letter. (Declaration of Ernest H. Eubanks, Docket No. 65-4 at ¶ 5). Defendant contends that it believed the document was received in response to its informal inquiry. (Leonard Declaration, Docket No. 65-2 at ¶ 7).

Defendant provided the unredacted Findings and Recommendations to Plaintiff on April 19, 2017 as part of the discovery process in this case. (Eubanks Declaration, Docket No. 65-4 at ¶ 7). After receiving the redacted version of the entire Safety Board Report in July 2017 (but without any other specificity as to timing), counsel for Defendant recognized that the findings and conclusions in the redacted Safety Board Report resembled the unredacted Findings and Recommendations previously received by Polaris. (*Id.* at ¶ 9). Defendant maintains that the "Report", presumably referring to the unredacted Findings and Recommendations, "was openly discussed by the parties and the Court during [an] October 10, 2017 confidential settlement conference." *Id.* at ¶ 10.

---

[4] For ease of reference, the unredacted document received by Defendant prior to this litigation is described as the "Findings and Recommendations." For present purposes, the parties hold this document out to be an unredacted portion of the Safety Board Report. As noted below, the Army has not acknowledged authenticity of this unredacted document. In addition to the Findings and Recommendations, the unredacted document also includes a narrative section and two completed Department of the Army Form 285-Ws, Technical Report of U.S. Army Ground Incident (Docket No. 52-4 at 3-12). Not all of the content of the unredacted document received by Defendant is redacted in the Safety Board Report produced by the Army on July 26, 2017. *See* Docket No. 52-3 at 13, 15, and 16-19.

According to Plaintiff, after the settlement conference held on October 10 and a review of documents produced by Defendant in discovery, Plaintiff's counsel likewise recognized that the Findings and Recommendations were similar in format to redacted sections of the Safety Board Report. (Docket No. 52 at 9).[5] Based on this review and discussions during the settlement conference, Plaintiff's counsel concluded that the Findings and Recommendations document received from Defendant in discovery was an unredacted version of some of the redacted portions of the Safety Board Report provided by the Army. (*Id*.). Plaintiff's counsel also determined that counsel for Defendant used the unredacted Findings and Recommendations during the settlement conference. (*Id.*). On October 16, 2017, counsel for Plaintiff advised Army counsel of the existence of the unredacted Findings and Recommendations. (*Id*. and Docket No. 49-3 at 4-5).

Upon receiving this information, Army counsel inquired on October 17, 2017 via email how Defendant obtained an unredacted copy of the Findings and Recommendations. (*Id.*). In this email, Army counsel stated that they were "not aware of any waiver of the safety privilege in this

---

[5] Plaintiff offers no explanation for why this realization took until October of 2017, when by July of 2017, Plaintiff was in possession of both the unredacted Findings and Recommendations produced by Defendant in discovery in April and the redacted Safety Board Report provided by the Army. In fact, neither party convincingly addresses why earlier attention was not given to either the circumstances of how Defendant came to be in possession of the unredacted Findings and Recommendations or what the document purports to be. Defendant states that it believed the document to be responsive to its informal inquiry to the Army, but acknowledges that the document came in an envelope with no return address and no cover letter, which reasonably suggests that the document did not come through regular Army channels. Nevertheless, Defendant apparently did nothing to confirm whether the unredacted document came from the Army, even after receipt of the redacted Safety Board Report provided by the Army. Similarly, Plaintiff states that, when the document was received from Defendant in discovery, it was believed to be a Polaris document, presumably meaning one created by or for Polaris. However, a careful review should have alerted Plaintiff that the document likely did not originate from Polaris. But Plaintiff apparently made no effort to determine how or by whom the document was created, either upon receiving the unredacted Findings and Recommendations in discovery in April 2017 or following receipt of the similar redacted Safety Board Report in July 2017. Only after the October 2017 settlement conference, when Defendant reportedly used the unredacted document, were these issues addressed directly.

case." (*Id.*). After hearing Defendant's version of events, Army counsel responded by email to the parties on October 18, 2017 and stated that "the documents you received were released without authorization and in violation of Army policy. I will notify the parties if the Army intends to take action with regard to this matter." (*Id.*). Army counsel followed up with a second email several hours later to clarify that "assuming the documents Polaris received are authentic, they were released without authorization and in violation of Army policy."[6] (*Id.*).

Defendant then made additional *Touhy* requests on October 23, 2017. (Docket No. 49-6). Within these requests, Defendant again asked for a complete and unredacted copy of the Safety Board Report. (*Id.* at 5). On October 27, 2017, before sending a response to Defendant's *Touhy* request, Army counsel emailed the parties to communicate that "the Army does not consider the safety privilege waived in this case and will assert the safety privilege if and when required to do so to protect the Army's interests." (Docket No. 49-4). The Army, via counsel, responded to Defendant's additional *Touhy* requests on October 31, 2017. (Docket No. 49-7). The Army again declined to produce the unredacted copy of the Safety Board Report, stating that "Defendant's request also seeks [a deposition], as well as a complete, unredacted copy of the Ground Accident Investigation Report, information which falls under the Army's safety privilege. Both requests are therefore denied based on DOD and Army Regulations and instructions regarding safety privilege." (*Id.*)

---

[6] With its second October 18, 2017 email, the Army indirectly refused to authenticate the unredacted Findings and Recommendations. However, the issue of authentication is not before the Court as the parties have assumed authenticity of the unredacted Findings and Recommendations in their respective filings. For that reason, the Court is without any basis to address the authenticity of the unredacted Findings and Recommendations, and finds it unnecessary to do so in any event because determination of authenticity does not change the outcome.

The parties participated in a deposition on November 7, 2017, where Plaintiff alleges that counsel for Defendant read from a copy of the unredacted Findings and Recommendations. (Docket No. 52 at 7). Prior to participating in the deposition, counsel for Defendant advised Army counsel on October 23, that Defendant "had not determined whether it intended to introduce the document at some future point in the litigation." (Eubanks Declaration, Docket No. 65-4 at ¶ 12). This exchange occurred during the discussions following Plaintiff's notification to the Army of the existence of the unredacted Findings and Recommendations, and was in response to a direct question from Army counsel to Defendant's counsel about what use, if any, Defendant had made of the documents "received anonymously relating to finding[s] and recommendations in the Lofgren accident," and "whether or not [Defendant] intends to attempt to introduce these documents during future litigation of this case." (*Id.*). There is no indication that Defendant's counsel notified the Army of Defendant's intent to use the unredacted Findings and Recommendations during Plaintiff's November 7 deposition.

This sequence of events, among other things, was the subject of a discovery conference on November 13, 2017 that resulted in an order to brief the issues. (Docket No. 45). In his motion and accompanying memorandum of law, Plaintiff requests that the Court decide two issues. First, whether Defendant should be precluded from using the privileged portions of the unredacted Findings and Recommendations, as well as all information gleaned from that document, in discovery and at trial in this case. Second, whether Defendant should be sanctioned for its use of the unredacted Findings and Recommendations, specifically whether counsel for Defendant should be disqualified, whether Defendant's defense of comparative fault should be stricken, or both.

In its response, Defendant asserts that the Army has not invoked the safety privilege and that even if the privilege was asserted, it has been waived. Defendant maintains that, for these reasons, Plaintiff's motion to preclude the use of the unredacted Findings and Recommendations must be denied. Defendant further contests that Plaintiff's request for sanctions has any basis.

## II. ANALYSIS

### A. Privilege

The first issue before the Court is whether the Army asserted a privilege. The privilege at issue in this matter is the Army's safety privilege, which protects, among other things, "products of deliberative processes of safety investigators." A.R. 385-10 § 3-11 and DoDI 6055.07, Encl. 5 § 2. The safety privilege is a governmental privilege that federal courts have long recognized in the context of military accident investigation reports. *See, e.g., Machin v. Zuckert*, 316 F.2d 336 (D.C. Cir. 1963).

Neither party contests that the safety privilege properly covers the redacted information in the Safety Board (Ground Accident Investigation) Report, including the section described as findings and recommendations. Defendant contends that the Army's October 27, 2017 email shows that the Army has not invoked the safety privilege. Plaintiff argues however that the Army unequivocally invoked the safety privilege on July 26, 2017 and October 31, 2017.

The Court finds that the Army clearly and affirmatively asserted the safety privilege with regard to the Safety Board (Ground Accident Investigation) Report on at least two separate occasions. The Army first invoked the privilege in its July 26, 2017 *Touhy* response to the parties, stating that "[a]ll redacted material was privileged safety information redacted pursuant to Department of Defense Instruction 6055.07 and Army Regulation 385-10." The Army maintained its assertion of privilege in its October 31, 2017 response to the second *Touhy* request, stating that

"Defendant's request also seeks [a deposition], as well as a complete, unredacted copy of the Ground Accident Investigation Report, information which falls under the Army's safety privilege. Both requests are therefore denied based on DOD and Army Regulations and instructions regarding safety privilege."

Defendant does not address these two assertions of privilege in its response and, instead, quotes the October 27, 2017 email from Army counsel as the primary support for its argument that the Army has not invoked the safety privilege. The section of the email quoted by Defendant advised that "the [Army] will assert the safety privilege if and when required to do so to protect the Army's interests." The Court construes that email in the context of the Army's inquiries to Defendant's counsel about what use had been made of the unredacted Findings and Recommendations and whether or not Defendant intended to introduce that document at some later time in the litigation. Given the admitted response of Defendant's counsel to Army counsel on October 23 that Defendant had not yet decided the extent to which it intended to use the unredacted document, the Court finds the Army's October 27 email entirely consistent with its earlier invocation of the safety privilege. Further, even if Defendant reasonably believed the "if and when" statement to be vague, the Army's explicit reassertion of the safety privilege on October 31, 2017 resolved any potential ambiguity created by the October 27, 2017 email.[7]

**B. Waiver**

Defendant argues that even if the Court finds that the Army invoked the safety privilege, the Army waived the privilege by providing the unredacted Findings and Recommendations to the company. However, the parties' communications with the Army clearly demonstrate otherwise.

---

[7] As further noted below, Defendant has taken no action to pursue a challenge to the privilege directly against the Army, which is not a party to this lawsuit.

The exhibits offered by the parties show that the Army has repeatedly communicated that it has not voluntarily waived the safety privilege in this case.

Defendant essentially argues that waiver can be inferred from its receipt of a copy of the unredacted Findings and Recommendations, notwithstanding the Army's statements, because courts, not armed service department secretaries, determine privilege issues, including waiver. However, unlike the *Cooper* cases relied upon by Defendant in which the Navy was a party to the litigation, the Army is not a party in this case. Nor does it appear that the Army has any notice of Defendant's efforts to have the safety privilege deemed waived.[8] The Court therefore declines to address this argument at this time.

### C. Use of the Unredacted Findings and Recommendations in Discovery

Plaintiff requests that the Court exercise its inherent authority to preclude Defendant from using the unredacted Findings and Recommendations in discovery as well as any information gleaned from the document. Defendant asserts that the case law cited by Plaintiff is inapplicable as it discusses documents obtained under different factual scenarios and covered by different privileges.

Courts possess the authority to enter protective orders limiting the use of documents obtained outside of the normal discovery process. *See, e.g.*, *Cabotage v. Ohio Hospital for Psychiatry, LLC*, No. 2:11–CV–50, 2012 WL 3064116, at *3 (S.D. Ohio July 27, 2012) (cataloging cases). This power is rooted in the Court's "inherent authority to control and preserve the integrity" of their judicial proceedings. *In re Shell Oil Refinery*, 143 F.R.D. 105, 109 (E.D. La. Aug. 14, 1992) (excluding proprietary documents obtained outside of discovery). In exercising

---

[8] As noted, it appears that the Army is also without notice of Defendant's intention to use the unredacted Findings and Recommendations for any purposes in this litigation.

this power, the court is concerned with "balancing the scales" to protect its judicial proceedings. *Id.* at 108–09. The exercise of this authority is more appropriate where the information at issue is sensitive, is potentially subject to a privilege, or has limited relevance to the action at hand. *In re for Wilson*, No 8:12-CV-02078-JMC, 2017 WL 2536913 at *3 (D.S.C. June 12, 2017) (citing *Cabotage,* 2012 WL 3064116 at *3). Further, a mere intent to use a document obtained outside of the discovery process is sufficient grounds for the Court to exercise its inherent authority to limit the use of documents. *See Cabotage*, 2012 WL 3064116, at *3.

The Court is persuaded by Plaintiff's argument that it should exercise its inherent authority in this instance by precluding the use of the unredacted Findings and Recommendations in discovery. Defendant, by its own admission, obtained the unredacted Findings and Recommendations outside the discovery process. The unredacted Findings and Recommendations contain information deemed privileged by the Army, and therefore would not be reachable through the routine discovery process. This means, at a minimum, that Plaintiff is unable to test the veracity of the information through ordinary discovery. For that reason alone, the use of the document in this case's ongoing discovery is likely to prejudice Plaintiff. Further, the usage of a privileged document not reachable or impeachable through discovery has the potential to negatively affect the integrity of these proceedings.

The Court is not convinced by Defendant's argument that the cases cited in Plaintiff's memorandum, specifically *Cabotage* and *In re Wilson*, are irrelevant. The Court finds the underlying reasoning in those cases persuasive and sufficiently analogous to the legal issues presented in this case. While the facts in those two cases differ from the facts here, the general

principle remains the same—courts can use their inherent authority to preserve the integrity of proceedings where documents are obtained outside of discovery.[9]

The need of the Court to preserve the integrity of this proceeding is not hypothetical. Plaintiff argues that Defendant has already used the unredacted Findings and Recommendations in a settlement conference and has quoted from the document in a deposition. Defendant does not dispute such usage in its response. In the absence of evidence to the contrary, the Court accepts Plaintiff's description of the document's usage. This finding is also supported by comparing the language present in the unredacted Findings and Recommendations at Docket Entry No. 52-4 with the deposition transcript at Docket Entry No. 52-5, showing that counsel for Defendant recited from the unredacted document verbatim in his questioning. The privileged nature of the unredacted portions of the Findings and Recommendations and Defendant's existing use of the document weigh heavily in favor of precluding use of the document in discovery.

Defendant shall make no further use of the unredacted Findings and Recommendations in discovery. To be clear, this includes either directly or indirectly. For instance (and only as an example), Defendant may not inquire in discovery or request further discovery about information that it knows solely as a result of having read the unredacted Findings and Recommendations, even if not directly referencing that document as the source. Defendant is cautioned that any attempt to use such information may result in further sanctions, including those requested by Plaintiff here. Additionally, if any question about Defendant's compliance with this restriction is raised, the burden will be on Defendant to demonstrate its compliance. The Court appreciates the potential

---

[9] Because the Court makes its findings upon other grounds, it need not address the parties' contentions regarding the applicability of either Army Regulations or of Fed. R. Civ. P. 45 to the present facts.

dilemma this creates (and discusses as much below), but this is a predicament of Defendant's own making.

Defendant had more than adequate time to take additional action regarding the Army's privilege assertion prior to both the settlement conference and the deposition. Receipt by Defendant of the redacted Safety Board Report in July 2017 was sufficient to put counsel on notice that there was at least an issue about whether the unredacted Findings and Recommendations contained information subject to the safety privilege. Defendant's use of the unredacted Findings and Recommendations without first seeking to address the Army's privilege assertion was at its own peril. Plaintiff's request is GRANTED.

**D. Use of the Unredacted Findings and Recommendations at Trial**

In addition to precluding the use of the unredacted Findings and Recommendations in discovery, Plaintiff also asks that Defendant be precluded from using the privileged portion of the document at trial. Defendant argues that it is premature for the Court to make such a determination. The Court agrees with Defendant that such a determination is premature and will therefore reserve the issue until the case is closer to trial. There may still be potential circumstances under which the document becomes admissible. For any future filings regarding this issue, however, the parties must address the authenticity of the unredacted portion of the Safety Board Report, titled Findings and Recommendations Case Number 20150630. Plaintiff's request is DENIED, but without prejudice for Plaintiff to again raise this issue.

**E. Use of Information Gleaned from the Unredacted Findings and Recommendations**

Plaintiff also requests that Defendant be precluded from using all information gained or gleaned from the privileged portion of the unredacted Findings and Recommendations. The Court declines to grant this relief as requested. While it is true that the bell cannot be unrung, the Court

must only balance the scales to protect the integrity of this proceeding. Preventing the use of all information gleaned from the document would be a broad mandate that would too heavily tip the scales, in part because of the difficulty in determining whether any particular bit of information may have been "gleaned" from the unredacted Findings and Conclusions or originated from some other source.

The Court has already restricted Defendant from using the unredacted Findings and Recommendations either directly or indirectly. However, not all of the information in the unredacted Findings and Recommendations is redacted from the Safety Board Report provided by the Army. There is at least sufficient context in the redacted Safety Board Report that some of the information contained in the unredacted document could arguably be gleaned by a reasonably competent trial attorney. Imposing the expansive rule requested by Plaintiff would therefore unfairly prejudice Defendant. Nevertheless, Plaintiff may pursue this issue further on a fact by fact basis if Plaintiff believes there is specific information that could be ascertained **only by** having read the unredacted document. Plaintiff is cautioned however that additional requests for relief regarding this issue should be filed sparingly and not used as any kind of leverage in the discovery process. The Court expects that Defendant will not disregard the Court's warning about use of the unredacted Findings and Recommendations. Plaintiff's request is DENIED without prejudice.

### F. Sanctions

Plaintiff requests that the Court sanction Defendant by either disqualifying counsel for Defendant or by striking its defense of comparative fault. In the alternative, Plaintiff asks that the Court allow additional discovery to support its sanction request. Defendant argues that Plaintiff's request for sanctions is without basis.

The Court believes that preclusion of the privileged portion of the unredacted Findings and Recommendations is a sufficient remedy for Plaintiff's grievance at this time. The Court therefore declines to disqualify counsel for Defendant or to strike Defendant's defense of comparative fault at this time. For the same reason, the Court also declines to allow additional discovery on the sanctions issues. However, the Court cautions Defendant that further usage of the unredacted Findings and Recommendations may result in the Court revisiting the sanctions sought by Plaintiff as well as the award of appropriate attorney's fees.

While not making any findings as to the applicability of Tennessee Rule of Professional Conduct 4.4 to this case, the Court nevertheless notes that RPC 4.4 illustrates the caution with which information that may be privileged ought to be handled. Comment 3 to RPC 4.4 provides guidance in suggesting that a party in possession of privileged information, including unsolicited information, may seek a definitive court ruling as to the proper disposition of that information. Even allowing for Defendant's argument that the unredacted Findings and Recommendations are not the kind of privileged information to which RPC 4.4 applies, the cautionary principal is the same—the most prudent approach would have been to seek a ruling about the use of the information, after notice to the Army. Further, while Fed. R. Civ. P. 26(b)(5)(B) does not apply to documents obtained outside of the discovery process, it also is instructive in that it requires that the party receiving privileged information "not use or disclose the information until the claim is resolved."

For purposes of the sanctions considerations, the Court will give the parties the benefit of the doubt that they may not have realized the significance of the unredacted Findings and Recommendations until they received the redacted Safety Board Report produced by the Army subject to the safety privilege in July of 2017. Any time after that however either party could have

brought these privilege issues to the Court's attention.[10]  Because both parties had ample opportunity to seek the Court's intervention in resolution of this matter, and neither did so earlier, the Court declines to impose sanctions at this time.  Plaintiff's request is DENIED.

### III.  CONCLUSION

For the reasons set forth above, Defendant is PRECLUDED from using the unredacted Findings and Recommendations in discovery.  The parties may continue to use the redacted version of the Safety Board Report.  To the extent Defendant believes that the unredacted document is discoverable within this action, it may seek production in accordance with applicable rules and statutes, and any further challenge to the Army's invocation of the safety privilege may be made after notice to the Army.  Plaintiff's requests to preclude usage of all information gleaned from privileged portions of the unredacted Safety Board Report, to preclude use of the unredacted Safety Board Report at trial, and for sanctions are DENIED without prejudice.

It is SO ORDERED.

_____
BARBARA D. HOLMES
United States Magistrate Judge

---

[10] See n.5.