IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| CHRISTOPHER LARS LOFGREN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) NO. 3:16-cv-02811 |
| v. | ) JUDGE RICHARDSON |
| | ) |
| POLARIS INDUSTRIES, INC., | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Pending before the Court is Defendant's Motion for Review of Nondispositive Order of Magistrate Judge (Doc. No. 127). The Magistrate Judge's Order denied Defendant's Motion Challenging United States Army's Invocation of the Safety Privilege (Doc. No. 122).

## BACKGROUND

This lawsuit arises from personal injuries sustained by Plaintiff, a West Point Cadet, while driving a Polaris MRZR vehicle during a U.S. Army summer training exercise at Fort Campbell. Following the incident, the Army ordered two separate investigations: (1) an informal "Legal Investigation," whose purpose, according to Department of Defense Instruction ("DoDI") 6055.07, is to inquire into all the facts and circumstances surrounding mishaps, as well as to obtain and preserve all available evidence for use in litigation, claims, disciplinary action, adverse administrative action, and for public disclosure; and (2) a "Safety Investigation," whose purpose is to "[P]revent mishaps." DoDI 6055.07 (Doc. No. 109-4 at 15). The report of the Legal Investigation is known as the AR 15-6 Report (Doc. No. 109-1), and the report of the Safety Investigation is known as the AR 385-10 Report (Doc. No. 109-2).

The complete AR 15-6 Report was produced to the parties by the Army in connection with this litigation, not subject to any privilege. The Army, which is not a party to this action, produced a redacted copy of the AR 385-10 Report and denied the parties' request for an unredacted copy, citing the military safety privilege. Polaris then moved to compel production of the unredacted version of the AR 385-10 report from the Army, and the Magistrate Judge denied that Motion to Compel. Doc. No. 122. The Magistrate Judge reviewed the unredacted report *in camera* and based her decision upon the military safety privilege and balancing the needs of the parties involved, including the non-party U.S. Army. *Id*.

"Safety privilege is based on a national defense need for rapid and accurate assessment of the causes of mishaps to prevent a recurrence and maintain mission readiness. This privilege creates restrictions on handling and releasing information in safety investigation reports." Doc. No. 109-4 at 21 (DoDI 6055.07). The Department of Defense ("DOD") has described two categories of safety information it considers to be privileged. The first is information given to a safety investigator pursuant to a promise of confidentiality and any information derived from that information or direct or indirect references to that information. *Id.* The second is products of deliberative processes of safety investigators. *Id*. DOD states that privileged safety information "shall be used for safety purposes only, specifically, preventing mishaps and reducing injury and property damage resulting from mishaps." *Id*. at 22.

## STANDARD OF REVIEW

Local Rule 72.01 allows a party to object to decisions of Magistrate Judges on non-dispositive matters by filing a Motion for Review. The Court must consider timely objections and "modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R.

Civ. P. 72(a); *Equal Employment Opportunity Comm'n v. Burlington Northern & Santa Fe Ry. Co.*, 621 F. Supp. 2d 603, 605 (W.D. Tenn. 2009) ("*Burlington"*). The "clearly erroneous" standard applies only to factual findings, while legal conclusions are reviewed under the "contrary to law" standard. *Id.*

Here, the parties do not dispute the underlying facts, so the Court focuses on the Magistrate Judge's legal conclusions. When examining legal conclusions under the contrary to law standard, a court may overturn any conclusions of law which contradict or ignore applicable precepts of law, as found in the Constitution, statutes, or case precedent. *Vanderbilt Univ. v. Scholastic, Inc.*, 321 F. Supp. 3d 830, 832-33 (M.D. Tenn. 2018).

## **ANALYSIS**

The "military safety privilege" was recognized in *Machin v. Zuckert*, 316 F.2d 336 (D.C. Cir. 1963), where the court held that confidential statements of private parties[1] made to investigators of an Air Force accident were privileged when disclosure would hamper the efficient operation of an important government program. *Id*. at 338. The *Machin* court also held that the military safety privilege extended to any conclusions that might be based upon such privileged information. *Id*. Finally, the court held that the military safety privilege attached to any portions of the investigative report reflecting military deliberations or recommendations as to policies that should be pursued. *Id.*; *see also Miles v. United States*, Case No. 3:14cv360, 2015 WL 11109793, at * 5 (N.D. Fla. Oct. 19, 2015) (recognizing the military safety privilege). In *Machin*, the court found that certain portions of the investigative report—specifically, the factual findings of Air

---

[1] In *Cooper v. Dep't of the Navy*, 558 F.2d 274, 277-78 (5th Cir. 1977), the court declined to make any distinction between statements of private parties to investigators and statements of military personnel to investigators for purposes of this privilege. *Cooper* arose in the context of a FOIA request and refers to the *Machin* privilege as an "executive privilege." *Id*.

3

Force mechanics—were not privileged, but the military safety privilege extended to the rest of the report. *Machin*, 316 F.2d at 339-40.

In *Miles*, the plaintiff sought redacted information from an investigative report prepared by the Air Force concerning a civil aircraft accident. The Air Force argued the redacted information was subject to the military safety privilege. *Miles*, 2015 WL 11109793, at * 4. The court noted that the Air Force's position found support in the case law. *Id.* at * 6 (citing cases). The court stated that the purpose of the privilege is to allow safety investigators to speculate, opine, analyze, and make recommendations in a hasty fashion, knowing that they may not be fully supported by the facts, so that all possible causes of an accident can be identified and all corrective action can be taken in as timely a fashion as possible. *Id*. at * 7.

The Supreme Court also recognized the military safety privilege in *United States v. Weber Aircraft Corp.*, 465 U.S. 792, 799 (1984), in the context of a FOIA request, holding that the FOIA exemption protected confidential statements made to air crash safety investigators. Similarly, the court in *Karantsalis v. Dept' of the Navy*, No. 12-23469-CIV, 2013 WL 1768659, at * 3 (S.D. Fla. April 24, 2013), held that the *Machin* privilege protected from disclosure witness statements and opinions in a Navy investigative report. And in *Cooper v. Dep't of the Navy*, 558 F.2d 274 (5th Cir. 1977), as previously noted, the court also recognized and even expanded the military safety privilege in a case involving a FOIA request for a Navy safety investigation report. *Cooper*, 558 F.2d at 277, *cited in Miles*, 2015 WL 11109793, at * 5.

The *Machin* "military safety privilege" includes two parts: confidential statements of witnesses and the deliberations of investigators. Although it includes protections for the deliberations of investigators, the Court considers the military safety privilege to be separate from

the "deliberative process privilege."[2] For example, in *Karantsalis*, the court found the information at issue was covered by the military safety privilege and, therefore, did not consider the defendant's "alternative argument" for exemption under the deliberative process privilege. *Karantsalis*, 2013 WL 1768659, at * 3. The military safety privilege plainly appears to apply here, and Defendant does not contend otherwise; Defendant instead argues that privilege is overcome. Doc. No. 128 at 7.

To determine whether the military safety privilege is overcome in this case, the Court looks at Defendant's asserted need for disclosure as balanced against the Army's need for protection. In *Burlington*, the court balanced the competing interests of the government and the party seeking the information by considering five factors (also considered by the Magistrate Judge here): (1) relevance of the information sought; (2) availability of other evidence; (3) seriousness of the litigation and issues involved; (4) role of government in the litigation; and (5) possibility of future timidity by government employees who will be forced to recognize that their secrets are violable. *Burlington*, 621 F. Supp. 2d at 607. By analogy, the Court will consider these factors in analyzing whether Defendant has overcome the military safety privilege here.[3]

---

[2] The deliberative process privilege protects from discovery documents reflecting advisory opinions, recommendations, and deliberations comprising part of a process by which governmental decisions and policies are formulated. *Burlington,* 621 F. Supp. 2d at 606. Similarly, the second part of the military safety privilege protects conclusions, deliberations or recommendations as to policies that should be pursued. *Karantsalis*, 2013 WL 1768659, at * 3; *Machin*, 316 F.2d at 339.

[3] The Army asks the Court to eschew the five factors set forth in *Burlington* and instead apply a two-part test—*i.e.,* to determine whether the redacted information qualifies for protection under the military safety privilege and, if so, whether the party requesting the information has sufficient need to overcome the Army's need for non-disclosure. But the Court can and will do both: apply the two-step test and the five-factors. Specifically, having answered the first question above, the Court now will consider the five factors in balancing the interests of the parties to answer the second question identified by the Army—whether the military safety privilege is overcome in this case.

The Army does not dispute that the allegedly privileged information is relevant to this action. That relevance alone does not overcome the privilege, however. Polaris argues that the release of one investigative report without the other is unfair, contending that the very unfairness of the situation makes the redacted information even more relevant. But such an "incomplete picture" of which Polaris complains would arise in all cases where privilege is asserted, at least in part, as to one but not both reports.[4] Portions of the Safety Investigation Report will often, if not always, be considered privileged under DoDI 6055.07 because of the nature of that safety information. Doc. No. 109-4 at 21. What Polaris calls an "irreconcilable conflict" between the release of one report and the redaction of the other is not unique to this case. Given the DOD instructions and policies, which have been upheld by the courts, this alleged "conflict" does not persuade the Court to find that Polaris's need and interests overcome the privilege.

The issue in this case is complicated by the fact that apparently Polaris *knows* what information is redacted from the AR 385-10 Report. Polaris has admitted that it received an unredacted draft of the AR 385-10 Report and produced that unredacted report to Plaintiff with Polaris' initial disclosures.[5] There is no evidence that this disclosure to Polaris was authorized or proper. There is no evidence that the disclosure of this information by Polaris to Plaintiff was authorized or proper. Indeed, the Court previously precluded Polaris from using the unauthorized

---

[4] Here, the Court holds only that the alleged unfairness from this purported "incomplete picture" is not sufficient to overcome the privilege. As discussed below, the Court is not saying that such unfairness concerns are unwarranted or not worthy of some other remedy. Moreover, the unfairness concerns still conceivably could relate to whether the privilege was waived by the Army, a possibility addressed below.

[5] Plaintiff asserts that he informed the Army of this unauthorized disclosure. Doc. No. 132 at 3.

document in discovery. Doc. No. 75.[6] So, Polaris is not trying to *discover* this information; rather Polaris wants to be able to *use* this information (which it has already received) to support its position. Its fairness argument is based upon the fact that it knows what the unredacted AR 385-10 Report says and believes that information to be helpful to its case. Absent this improper and unauthorized disclosure, Polaris would not be able to assert that release of one report and not the other *actually* (as opposed to merely possibly) presents an unfairly "incomplete picture" to a greater extent in this case than in other cases. The Court is loath to allow the Army's privilege to be overcome based on knowledge gained by Polaris through a leak that was violative of the very privilege the Army seeks to preserve. Polaris has cited no cases that have applied this kind of fairness argument to overcome the military safety privilege,[7] and the Court does not consider this unusual "fairness" argument to be persuasive.

As for the second factor, the Army has produced and provided access to a substantial amount of evidence related to this incident, including access to the actual subject vehicle, the site of the accident, numerous Army witnesses, other evidence regarding the subject vehicle, and the complete AR 15-6 Report. Polaris may certainly use the underlying factual evidence to develop its own expert testimony and arguments. Polaris places particular importance upon the fact that these are "*the Army's* conclusions and recommendations," but conclusions and recommendations in AR 385-10 Reports are *always* the Army's conclusions and recommendations. This fact is no basis for overcoming the privilege in this particular case, because the fact exists in *every* case. The Army,

---

[6] The Court also allowed Polaris to directly challenge the Army's assertion of privilege, which eventually led to this Motion for Review. Doc. No. 75.

[7] In fact, Polaris has not cited a single case in which a court found that a party had demonstrated sufficient need to overcome the military safety privilege.

whatever its gravitas, has not been designated as an expert in this case, and its AR 15-6 Report is open to challenges and rebuttal by both sides.

As for the third factor, no one disputes the seriousness of this litigation and the issues involved. With regard to the fourth factor, the role of government in the litigation, the Army is not a party herein. Polaris points out that the Army owned the vehicle at issue and was involved in its design, development, testing and use. The role of the Army in such matters may turn out to be relevant to the issues between the parties, and the Army is already cooperating in discovery, but the limited role of the Army in this case does not outweigh the need for the military safety privilege as to this specific information. There is no allegation or evidence before the Court that the Army, in making decisions as to what to release or not release, is playing a strategic game or trying to "have it both ways" for strategic purposes. The Army is involved simply because the parties sought information from it.

As for the fifth factor, the Court agrees with the Magistrate Judge that the potential impact a release of information here would have on future safety investigations is a significant factor in favor of non-disclosure. In *Miles*, the court found that the military safety privilege applied to a request for an unredacted version of an Air Force safety investigation report. *Miles*, 2015 WL 11109793, at * 7. As noted above, important to that court's decision was the purpose of the privilege, which is "to allow safety investigators to speculate, opine, analyze, and make recommendations in a hasty fashion, knowing they may not be fully supported by facts, so that all possible causes of an accident can be identified and all corrective action can be taken in as timely a fashion as possible." *Id*. Citing to declarations from Air Force safety officials, the court also noted that the legitimate purpose of the military safety privilege would be undermined if the

privilege were to be applied on a case-by-case basis, in the manner Polaris suggests here. *Id*. at 4-7.

Here, the Army has filed the Declaration of Brigadier General Timothy J. Daugherty, Commander of the U.S. Army Combat Readiness Center in Fort Rucker, Alabama, whose mission is to prevent accidents. Doc. No. 134-1. According to Daugherty, "[Army] safety investigations are used solely to investigate and understand the cause of accidents in order to prevent future accidents." *Id*. at 2. Daugherty stated that "the Army does not permit use of the privileged portions of the Safety Accident Investigation Report for any purpose other than safety and accident prevention." *Id*. Explaining further, Daugherty said, "The release of the findings, recommendations, conclusions and speculations made by the accident investigation board would seriously undermine the Army's Safety Program, the primary purpose of which is to prevent accidents." *Id*. "The privileged, limited use nature of Army safety accident investigations is an absolute necessity to a successful Army safety program." *Id*. at 3.

If courts were to consider whether the military safety privilege is overcome (on a case-by-case basis) based upon whether the second report contradicts the first, or whether the first report favors one side in litigation and the second report favors another, the underlying purpose of the privilege would be destroyed. In this case, the information at issue falls within the military safety privilege, and that privilege is not overcome by any demonstrated need of Polaris. Information does not lose its privileged status merely because it conflicts with previously disclosed information.

That is not to say that a party's prior disclosure of certain information cannot possibly waive the party's privilege as to other (privileged) information on the same subject. Thus, the Court has considered whether the Army in this case waived the military safety privilege as to the

redacted portions of the AR 385-10 Report by releasing the AR 15-6 Report.[8] The Army has not asserted the military safety privilege as to the AR 15-6 Report. Therefore, it has not released *some* information that is covered by the military safety privilege while withholding other information covered by the military safety privilege on the same subject. Even if the Army has asserted that the deliberative process privilege applies to the AR 15-6 report—and the briefing is not entirely clear on whether this is the case—the Court believes that release of that information (allegedly covered by the deliberative process privilege) does not necessarily waive the military safety privilege as to the AR 385-10 Report. In other words, the Court does not find that waiver of the deliberative process privilege in one document waives the military safety privilege in another document. [9]

---

[8] In fact, the Court specifically ordered briefing on this topic because it considers Polaris's fairness concerns to be valid and related more to the rationale for the waiver doctrine than to the "balancing of interests" test discussed above. Polaris's briefing on waiver misses the mark because: (1) it does not establish that release of the AR 15-6 Report resulted in disclosure of information protected by the military safety privilege; and (2) it invokes waiver principles primarily in the attorney-client and work-product contexts, and not in the current context of a claim of military safety privilege, which (for policy reasons) tends to be more compelling as advancing the public interest.

In addition, Polaris cites to *Rothschild v. United States*, Civil No. 15-CV-030-J, 2016 WL 8856652 (D. Wyo. March 16, 2016) in arguing that the Army could have claimed privilege for all or parts of the AR 15-6 Report. *Rothschild* found that the defendant had properly asserted the *deliberative process privilege* as to both the report of an informal legal investigation and the report of a safety investigation (except as to certain factual information contained in the reports). *Id*. at \*\* 3-4. The Army here has asserted a different privilege, the military safety privilege, as to its safety investigation report.

[9] *See, e.g.,* 26A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 5722 (1st ed. 2018) ("Hence, what constitutes 'waiver' of one privilege may not waive a different privilege."); *cf. K.W. Muth Co. v. Bing-Lear Mfg. Group, LLC*, 219 F.R.D. 554, 568 (E.D. Mich. 2003) (party's waiver of attorney-client privilege does not necessarily waive work-product protection); *In re Columbia/HCA Healthcare Corp. Billing Practices Litigation*, 293 F. 3d 289, 304 (6th Cir. 2002) (same); *Edwards v. Whitaker*, 868 F. Supp. 226, 230 (M.D. Tenn. 1994) (same).

For all these reasons, balancing the interests and in its discretion, the Court finds that release of the information in the AR 15-6 Report did not waive the Army's military safety privilege in the redacted portions of the AR 385-10 Report.[10]

That is not to say that all of the Army's redactions in the AR 385-10 report are appropriate. The issue remains as to whether each individual redaction protects information covered by the military safety privilege without waiver. After its *in camera* review of the unredacted AR 385-10 Report, the Court finds that the military safety privilege has been properly asserted, and also not waived, as to all redacted portions of the Report except for all or part of three sentences.

In each of these three instances, the Army attempts to very finely parse privileged information from unprivileged information but fails in so doing because: (a) the redacted language is not privileged; and, alternatively with respect to two of the three instances (b) the Army has waived any privilege that could conceivably be deemed to exist. First, at page 14 of Doc. No. 109-2 (the redacted AR 385-10 Report), first and second lines, the Court finds that the language redacted after the words "crested the berm" simply complete that factual sentence, and that therefore this redacted language is of the same type as the unredacted language of the same sentence. This means that the redacted language is not privileged because, as the Army insists, all disclosed (*i.e.*, unredacted) content from the AR 385-10 Report was privileged. (D.E. 138, at 5)

---

[10] With the privileged portions of the AR 385-10 Report properly being kept out of this litigation based on this Memorandum Opinion and the corresponding Order, Defendant's concerns about fairness and completeness remain valid and arguably even more compelling than before. The parties are advised that such concerns could—not to say will—incline the Court to exclude (under the Federal Rules of Evidence) some or all of the actual text of the AR 15-6 Report if offered into evidence. It is one thing to say that *the Army* possesses and has retained its privilege as to redacted portions of the AR 385-10 Report. It is another to say that *Plaintiff* may use the AR 15-6 Report entirely as he wishes in the absence of the availability of the complete AR 385-10 Report to Defendant.

("the Army has never voluntarily released any privilege portion of the Safety Board Report to the public"). And to the extent the redacted portion of that sentence conceivably could be deemed privileged, such privilege was waived by not redacting the first part of the sentence.

Second, at page 17 of Doc. No. 109-2 (the redacted AR 385-10 Report), section (3), last sentence, after "The Board observed," the Court finds that the information redacted is a mere physical factual observation by the investigator, which is properly deemed unprivileged because it may be disclosed without in any way jeopardizing the policy reasons for the privilege, as stated in *Machin*, 316 F.3d at 399. Third, at page 42 of Doc. No. 109-2 (the redacted AR 385-10 Report), in the "Specific Description of Activity/Task" section, sixth line, the Court finds that the language redacted after the words "The SM crested the 300m berm," to the end of that sentence, simply completes that factual sentence. For the reasons discussed above in connection with the first of the three instances, this means that the redacted language is not privileged and that, alternatively, any conceivable privilege has been waived with respect to it.[11]

## **CONCLUSION**

For these reasons, the Court finds that the Order of the Magistrate Judge (Doc. No. 122) is not contrary to law. Accordingly, that Order will be **AFFIRMED** except as to three specific exceptions listed above. An appropriate Order will be entered.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE

---

[11] Especially since the Court's finding of waiver is merely an alternative basis for ordering disclosure (in two of the three instances), and that the Court does not in fact believe that redacted information actually was privileged, the Court does not address any possible notion that the Army's waiver of the privilege as to these two partial sentences might constitute a broader subject-matter waiver of the military safety privilege.