IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| CHRISTOPHER LARS LOFGREN, | ) | |
| | ) | |
| Plaintiff, | ) | NO. 3:16-cv-02811 |
| | ) | JUDGE RICHARDSON |
| v. | ) | |
| | ) | |
| POLARIS INDUSTRIES INC., | ) | |
| | ) | |
| Defendant. | | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant's Motion for Certification under 28 U.S.C. § 1292(b) (Doc. No. 194, "Motion"). Via the Motion, Defendant asks the Court to amend its prior order (Doc. No. 193, "Order") that denied Defendant's "Motion to Dismiss Pursuant to Rule 12(b)(1)" (Doc. No. 165, "Motion to Dismiss") to certify the Order for interlocutory appeal to the Sixth Circuit. Plaintiff has responded. (Doc. No. 197). Defendant has replied. (Doc. No. 198). The Motion is ripe for review.

For the reasons discussed herein, the Court will deny the Motion.

## BACKGROUND AND PROCEDURAL HISTORY[1]

On June 30, 2015, Plaintiff, a West Point cadet in training with the United States Army at Fort Campbell in Tennessee, was involved in an accident while operating a MRZR-4 Lightweight

---

[1] The facts in this section are taken essentially verbatim from the Court's Memorandum Opinion accompanying the Order. (Doc. No. 192 at 1-2). As explained that Memorandum Opinion, most of the facts appear to be undisputed, but the Court found that even if it accepted all the facts in favor of Defendant the political question doctrine would not apply. (*Id.* at 192 n. 2). The Court has included them here for convenience. *U.S. ex rel. Elliott v. Brickman Grp. Ltd., LLC*, 845 F. Supp. 2d 858, 860 (S.D. Ohio 2012). The Court did not necessarily accept the facts as true in ruling on its Motion to Dismiss, as the Court faced a 12(b)(1) factual challenge. (Doc. No. 192 at 1, 4-6).

1

Tactical All-Terrain Vehicle ("MRZR"). (Doc. No. 180 ¶ 1).[2] On the day of the accident, Plaintiff began vehicle "familiarization" on the sniper range following basic driver training. (*Id.* at ¶ 56). The sniper range was used for training because the trails normally used were temporarily closed. (*Id.* at ¶ 57). The sniper range is over 1,000 feet long and contains large dirt berms at 100-meter intervals. (*Id.* at ¶ 3). The tops of the berms are roughly level, but the ground slopes downwards, causing variance in the heights of the berms. (*Id.* at ¶ 4).

During the familiarization process, Chief Warrant Officer Fuchs drove a lap around the sniper range with Plaintiff and Cadet Truax as passengers, heading north along a gravel path to the top of the range, before turning south and carefully navigating the berms. (*Id.* at ¶ 58). During this drive, Fuchs never caused the MRZR's wheels to leave the ground, and he did not travel over the speed of around 25 to 30 miles per hour. (*Id.* at ¶ 59; Doc. No. 186 ¶ 129). Fuchs then exited the MRZR, allowed Plaintiff to take over as the driver, and told Plaintiff to "take it easy." (Doc. No. 180 at ¶ 60). Cadet Truax moved to occupy the front-passenger seat. (*Id.* at ¶ 61).

After taking over the driver's role, Plaintiff drove north, made a U-turn beyond the 200-meter berm, and then came to a stop. (*Id.* at ¶ 63). Plaintiff accelerated, the MRZR lost contact with the ground, and when it landed both seat bases had broken in a similar location.[3] (*Id.* at ¶¶ 64,

---

[2] The Court notes that most of the documents in this case were filed, and remain, under seal. The sealing shall be deemed lifted by virtue of this memorandum opinion only to the extent that particular information therein has been referred to herein.

[3] Plaintiff and Defendant dispute how the accident occurred. Defendant claims that Plaintiff accelerated to 40 miles per hour and launched the MRZR into the air, causing all four wheels to leave the ground. (Doc. No. 64 ¶ 64, 65). Plaintiff disputes that his speed reached 40 miles per hour and characterizes the vehicle leaving the ground as "inadvertent[ ]." (*Id.*). Regardless of the exact disputed circumstances, it is undisputed that the MRZR left the ground and the seat bases were thereafter broken in similar locations.

65). As a result of the accident, Plaintiff suffered a spinal injury and is a paraplegic. (Doc. No. 1 at 1). Cadet Truax, who was in the MRZR with Plaintiff, was uninjured. (Doc. No. 180 at ¶ 8).

Plaintiff's Complaint pleads counts of 1) negligence, 2) strict liability, 3) breach of warranty, and 4) a constitutional challenge to Tennessee laws limiting punitive damages. (Doc. No. 1). Plaintiff requests relief in the form of compensatory and punitive damages. (*Id.* at 26).

In the Order, which denied Defendant's Motion to Dismiss under 12(b)(1) asserting the applicability of the political question doctrine, the Court found that it had subject matter jurisdiction over the dispute and that it was not deprived of jurisdiction by the political question doctrine. (Doc. No. 193). Via the Motion, Defendant now asks the Court to certify the Order for interlocutory appeal to the Sixth Circuit pursuant to 28 U.S.C. §1292(b).

## LEGAL STANDARD

The relevant statute provides that an interlocutory appeal is appropriate when "a district judge . . . shall be of the opinion that such order [1] involves a controlling question of law [2] as to which there is substantial ground for difference of opinion and [3] that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292. "Review under § 1292(b) is granted sparingly and only in exceptional cases." *In re City of Memphis*, 293 F.3d 345, 349 (6th Cir. 2002). "The party seeking an interlocutory appeal has the burden of showing exceptional circumstances exist warranting an interlocutory appeal." *Gieringer v. Cincinnati Ins. Cos.*, No. 3:08-CV-267, 2010 WL 2572054, at *2 (E.D. Tenn. June 18, 2010). "[D]istrict court judges have broad discretion to deny certification even where the statutory criteria are met." *Wang v. Gen. Motors, LLC*, No. CV 18-10347, 2019 WL 1950185, at *1 (E.D. Mich. May 2, 2019) (quoting *Century Pac., Inc. v. Hilton Hotels Corp.*, 574 F. Supp. 2d 369, 370 (S.D.N.Y. 2008)).

**DISCUSSION**

In its Motion, Defendant requests that the Court amend its previous Order denying the Motion to Dismiss and certify the following question for appeal: "Whether the political question doctrine deprives the Court of subject-matter jurisdiction because, at trial, the jury will need to evaluate the United States Army's decisions regarding how to train and supervise military personnel when determining whether to allocate fault to the Army." (Doc. No. 195 at 2).[4] Defendant argues that all three requirements of 28 U.S.C. § 1292(b) are met in this case. (*Id.*). Plaintiff counters that none of the statutory requirements are met in this case. (Doc. No. 197 at 6).[5]

A. Controlling Question of Law

"As many cases recognize, there are actually two requirements within what this Court (and most others) has labeled as § 1292(b)'s first element: (1) The question involved must be one of law; and (2) It must be controlling." *U.S. ex rel. Elliott v. Brickman Grp. Ltd., LLC*, 845 F. Supp. 2d 858, 865 (S.D. Ohio 2012) (cleaned up and citation omitted). "The Sixth Circuit has . . . set a low bar for a determination that a question of law is 'controlling' in the context of a motion for certification under § 1292(b)." *Newsome v. Young Supply Co.*, 873 F. Supp. 2d 872, 875–76 (E.D. Mich. 2012). "A legal issue is controlling if it could materially affect the outcome of the case. A

---

[4] To the extent that Defendant's statement of the issue presumes (rather than portends a dispute regarding) the truth of the proposition that "at trial, the jury will need to evaluate the United States Army's decisions regarding how to train and supervise military personnel when determining whether to allocate fault to the Army," the Court does not embrace such presumption, the correctness of which is unresolved and debatable. As indicated in its Order and herein, the Court has found it unnecessary to determine (and has declined to determine) whether the jury would need to make such an evaluation.

[5] Plaintiff additionally argues that the Motion may be untimely. (Doc. No. 197 at 19-20). As the Court finds that the Motion should not be granted on other grounds, the Court declines to determine whether the Motion was timely or not when the Sixth Circuit has not ruled on the question.

legal question of the type envisioned in § 1292(b), however, generally does not include matters within the discretion of the trial court." *In re City of Memphis*, 293 F.3d at 351 (internal citation omitted). Plaintiff agrees that this is a controlling question, since if the Sixth Circuit determines the political question doctrine applies this matter would be concluded due to the Court's lack of subject matter jurisdiction. (Doc. No. 197 at 6). However, Plaintiff believes that this is not a pure question of law because the Court has applied the law to the facts in this case. (*Id.*).

The Court agrees that the Order addressed a controlling question, because if the Sixth Circuit were to decide that the political question doctrine applies, the Court would lack jurisdiction over this matter. *See Newsome*, 873 F. Supp. 2d at 876 ("[A] finding on appeal that Defendants' position on the motion was correct would terminate the litigation in its entirety and is therefore a 'controlling question.'").

However, the question at issue is not one purely of law. In *Nice v. L-3 Commc'ns Vertex Aerospace LLC*, 885 F.3d 1308, 1312–13 (11th Cir. 2018), the Eleventh Circuit recently ultimately decided not to exercise its discretion to hear a case under § 1292(b) in a similar circumstance, even though the district court had granted a certificate of appealability. *Id.* at 1311 n.2. In vacating the district court's order granting permission to appeal under § 1292(b), the Eleventh Circuit explained:

> That leaves the issue of whether we should permit this appeal under § 1292(b), which grants us discretionary jurisdiction to exercise interlocutory review. *See* 28 U.S.C. § 1292(b); *McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1253 (11th Cir. 2004). "We have identified five conditions that generally must be met before we will consider an issue on interlocutory appeal under § 1292(b)." *Mamani v. Berzain*, 825 F.3d 1304, 1312 (11th Cir. 2016). One of those is that the "issue is a pure question of law," *id.*, and the defendants falter at that first hurdle. They argue that the condition is satisfied because we need to decide only whether their comparative fault defense divests the district court of subject matter jurisdiction under the political question doctrine. They assert that the facts underlying that issue are undisputed and sit "neatly and clearly atop the record."

5

> The issue is neither neat nor clear from any vantage point in the record. And it is far from being one of pure law. The basic historical facts underlying this case may be undisputed—the what, when, and where of the crash. The question of who caused the crash, however, is hotly disputed, as the defendants conceded at oral argument. O.A. Trans., Oct. 27, 2017.7 And determining whether the defendants' comparative fault defense would force the jury to evaluate sensitive Navy decisions requires us to answer the disputed question of who caused the crash: the Navy, the defendants, or both. That case-specific inquiry does not present a pure question of law but a mixed one of law and fact. It would require us to decide whether "the district court properly applied settled [political question doctrine principles] to the facts or evidence of [this] particular case." *Mamani*, 825 F.3d at 1312 (quotation marks omitted). As a result, the first requirement for exercising jurisdiction under § 1292(b) is not satisfied.

*Nice*, 885 F.3d at 1312–13; *see also U.S. ex rel. Elliott v. Brickman Grp. Ltd., LLC*, 845 F. Supp. 2d 858, 864 (S.D. Ohio 2012) ("Perhaps most significantly for this case, § 1292(b) is not appropriate for securing early resolution of disputes concerning whether the trial court properly applied the law to the facts." (citation and quotation marks omitted) (collecting cases)).[6] The Court applied the law to the facts in this case to determine that the political question doctrine does not

---

[6] Defendant argues that the Court should find this to be a pure question of law because (according to Defendant) there is no relevant dispute of fact. (Doc. No. 198 at 2-3). Though there were not major disputes of fact at issue in the Memorandum Opinion and Order, the Court did apply the law to the particular facts at hand, which makes this a mixed question of law and fact rather than a pure question of law. *Singh v. Rosen*, 984 F.3d 1142, 1148 (6th Cir. 2021) (describing a mixed question as "the application of a legal standard to settled facts" (citation omitted)), *reh'g denied* (Feb. 11, 2021). This type of mixed question is not appropriate for review under § 1292(b). *See e.g.*, *U.S. ex rel. Elliott*, 845 F. Supp. 2d at 867 (collecting cases); *In re Pilch*, No. 107-CV-306, 2007 WL 1686308, at *4 (W.D. Mich. June 8, 2007) ("An appeal that presents a mixed question of law and fact does not meet this [pure question of law] standard."). This is true even if the facts are generally undisputed; the salient point is that the Court's decision involved applying the law to facts, rather than deciding a question of pure law, and this point is in no way diminished by the observation that the facts relevant to the Court's decision are (at least for the most part) undisputed. *See e.g.*, *Singh*, 984 F.3d at 1148; *Audi v. Barr*, No. 20-3196, 2020 WL 7419597, at *4 (6th Cir. Dec. 18, 2020) ("[T]he application of statutes or regulations to undisputed facts [is] sometimes referred to as mixed questions of fact and law." (citation omitted)); *Awad v. Holder*, 429 F. App'x 552, 556 (6th Cir. 2011) (same).

apply. To provide one example of many, the Court explained that the Defendant's first defense did not fall under the first *Baker* test by applying the relevant law to the facts:

> However, these cases typically involved more extreme situations than the situation at hand. The Court recognizes that a case does not have to involve events in a combat zone in order to raise a political question. But the situation at hand—a vehicle crash on American soil—suggests that review of decisions of the executive branch will necessarily be less consequential than many of the reviews discussed herein. The use of the MRZR during a training exercise is much less extreme than the training in *Carmichael*, where a private contractor was trained according to military standards and guidebooks, and the plaintiff's negligent-training claim would directly involve the judiciary in the review of a convoy during wartime. 572 F.3d at 1293, 1295. This is also much less extreme than the training in *Aktepe*, where a court did not involve itself in the wisdom of United States participation in NATO training exercises. 105 F.3d at 1403. Instead, the Court finds that the training at issue indicates that "national defense interests may be more remote." *Tiffany*, 931 F.2d at 280. The Court is unconvinced that decisions such as when to allow a cadet to drive a MRZR, where to drive that MRZR, and how to drive the MRZR would involve review of a military decision beyond this Court's proper purview.

(Doc. No. 192 at 22).

Therefore, the Court finds that the first requirement is not met in this case.

### B. Substantial Ground for Difference of Opinion[7]

---

[7] Defendant argues in its Motion that (according to Defendant), the Army will need to be included on the jury form in this case. (Doc. No. 195 at 5-8). Defendant argues that the rule in *Snyder* (that Tennessee courts do not apportion liability to an immune employer) does not apply to the case at hand because the party in question, the Army, is entitled to sovereign immunity (as opposed to the workers' compensation immunity involved in *Snyder*). (*Id.*). However, the Court ultimately declined not only to apply *Snyder*, but even to decide whether *Snyder* was applicable, because it found this issue did not affect the Court's conclusion as to the applicability of the political question doctrine. (Doc. No. 192 at 20) ("[T]he Court declines to decide whether *Snyder* applies to the facts at hand . . . even without applying the exception in *Snyder*, Defendant's defenses do not raise a political question that is exclusively in the domain of the executive branch, because the Court is unconvinced that in evaluating Defendant's two defenses it will have to 1) reexamine a decision of the military that is 2) insulated from judicial review."). As the Court suggested in its previous ruling, the Court does not find the prospect of the Army appearing on the verdict form for apportionment of fault (as it would if and only if *Snyder* is inapplicable) to be the kind of circumstances that would suggest the existence of a political question in this case. Therefore, even if Defendant is correct that *Snyder* does not apply in this case, *Snyder*'s inapplicability would not suggest a substantial ground for difference of opinion as to the correctness of the Court's decision.

7

"District courts in this circuit have interpreted a substantial ground for difference of opinion . . . regarding the correctness of the decision to mean when (1) the question is difficult, novel and either a question on which there is little precedent or one whose correct resolution is not substantially guided by previous decisions; (2) the question is difficult and of first impression; (3) a difference of opinion exists within the controlling circuit; or (4) the circuits are split on the question." *In re Miedzianowski*, 735 F.3d 383, 384 (6th Cir. 2013) (quoting *City of Dearborn v. Comcast of Mich. III*, Inc., No. 08–10156, 2008 WL 5084203, at *3 (E.D. Mich. Nov. 24, 2008) (cleaned up)). "Simply because a court decides a novel issue or a question of first impression does not mean there is substantial ground for difference of opinion concerning the correctness of the ruling. Serious doubt as to how an issue should be decided must exist in order for there to be substantial ground for difference of opinion." *City of Dearborn*, 2008 WL 5084203, at *3 (citation omitted). "[W]hen novel legal issues are presented, on which fair-minded jurists might reach contradictory conclusions, a novel issue may be certified for interlocutory appeal without first awaiting development of contradictory precedent." *In re Trump*, 874 F.3d 948, 952 (6th Cir. 2017) (citation omitted).

The Court does not find that any of the situations described in *Miedianowski* apply. The Court noted in its Memorandum Opinion accompanying the Order that "Courts in the Sixth Circuit have had few opportunities to address the application of the political question doctrine when decisions of the military are potentially implicated. Though there are some minor inconsistencies between circuits, the overall analysis of the political question doctrine in the military context is substantially similar across circuits." (Doc. No. 192 at 11 n.13). However, as this case requires the

---

In short, as the Court did not rely on (or decide the applicability of) *Snyder* in its Memorandum Opinion, the Court is not persuaded by Defendant's arguments that the applicability (or inapplicability) of *Snyder* creates a substantial ground for difference of opinion.

8

application of the political question doctrine (which has been addressed by many courts of appeals and district courts without any relevant circuit split or difference of opinion) to the particular facts of the case at hand, the inquiry of whether this is a question of first impression is not really even applicable to this case. The correct legal standard is clear enough, and this is certainly not a case of first impression regarding any aspect of the legal standard.[8] Though resolution of the issue before the Court was not necessarily easy, the Court was guided by previous decisions and cited to numerous cases in its Memorandum Opinion that it found instructive when applying the settled law regarding the political question doctrine to the facts at hand. In discussing this requirement, Defendant primarily reargues the arguments in its Motion to Dismiss and reiterates its (and a potential juror's) disagreement with this Court's ruling. Disagreement with the Court is not a sufficient reason to certify this question for appeal to the Sixth Circuit. *Gieringer*, 2010 WL 2572054, at *3 ("Indeed, other district courts have explained that the element of 'substantial ground for difference of opinion' requires more than mere disagreement with the district court's decision or an assertion that such decision was incorrect; rather, there must be genuine doubt as to the correct legal standard.").

Therefore, the Court finds that the second statutory requirement is not met in this case.

C. <u>Materially Advance Ultimate Termination of Litigation</u>

"The requirement that an appeal may materially advance the ultimate termination of the litigation is closely tied to the requirement that the order involve a controlling question of law."

---

[8] This case is a "first" in that it is surely the first case to apply that settled legal standard to the very specific facts at hand here. But that is not what is meant in this context by "case of first impression," which refers to a first vetting of a legal issue and not the first vetting of particular facts; if it meant the latter, that would make a very large number of cases ones of "first impression," since so many cases involve unique facts.

*City of Dearborn*, 2008 WL 5084203, at *3 (citation omitted). "Interlocutory appeal is most appropriate early in the proceedings. In contrast, the role of interlocutory appeal is diminished when a case is nearing trial and large expenditures have already been made." *W. Tennessee Chapter of Associated Builders & Contractors, Inc. v. City of Memphis*, 138 F. Supp. 2d 1015, 1026 (W.D. Tenn. 2000) (citation omitted). "The moving party satisfies the third requirement where the resolution of a controlling legal question would avoid trial, as well as when it would otherwise substantially shorten the litigation. In other words, an interlocutory appeal materially advances litigation when it saves judicial resources and litigant expense." *Wang*, 2019 WL 1950185, at *1 (cleaned up and citation omitted).

This matter has been pending since 2016. The parties have already completed extensive discovery and briefing of multiple dispositive motions. It is true that terminating the matter due to a lack of subject matter jurisdiction would save the parties the time and expense of trial—which, as Defendant notes, will likely be a complex one necessitating substantial effort on all sides. But the length of time that this matter has been pending and its advanced stage in the pretrial process counsel against granting the Motion. (Doc. No. 195 at 14-15); *Gieringer*, 2010 WL 2572054, at *4 ("Under the circumstances, there is no reason to expect that this case will not be resolved in the near future—in fact, due to the relatively advanced stage of this litigation, certifying for an appeal at this stage would not materially advance the litigation and would instead result in substantial delay."). Though there is currently no trial scheduled due to the pending summary judgment motion, the Court finds that certifying a question for appeal at this advanced stage in litigation would result in additional substantial delay to an already lengthy litigation.

Therefore, the Court does not find the third statutory requirement met in this case.

10

Case 3:16-cv-02811   Document 199   Filed 03/16/21   Page 10 of 11 PageID #: 11323

## **CONCLUSION**

For the reasons discussed herein, the Court **DENIES** Defendant's Motion.

IT IS SO ORDERED.

_Eli Richardson_
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE