IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

CHRISTOPHER LARS LOFGREN,      )
                                     )
        Plaintiff,               )
                                     )     NO. 3:16-cv-02811
v.                               )     JUDGE RICHARDSON
                                   )
POLARIS INDUSTRIES INC.,       )
                                   )
        Defendant.            )

## REDACTED MEMORANDUM OPINION

Defendant has filed a motion for summary judgment (Doc. No. 164, "Motion"). Plaintiff

has responded. (Doc. No. 179). Defendant has replied (Doc. No. 185). The Motion is ripe for

review. This unredacted version of this opinion has been filed under seal. This version of the

opinion has been redacted and is suitable for the public. The Court notes that most of the documents

in this case were filed, and remain, under seal. The sealing shall be deemed lifted by virtue of this

memorandum opinion only to the extent that particular information in the unredacted version has

been referred to herein and not been redacted by the Court.

For the reasons discussed, Defendant's Motion for Summary Judgment will be granted in

part and denied in part.

## FACTUAL BACKGROUND[1]

A. <u>The incident</u>

---

[1] Unless otherwise noted, the facts in this section are taken from facts in the Complaint that are not
disputed, Plaintiff's Response to Statements of Undisputed Facts, and Defendant's Response to
Statements of Undisputed Facts (where the facts are undisputed). (Doc. Nos. 1, 180, 186).

On June 30, 2015, Plaintiff, a West Point cadet in training with the United States Army at Fort Campbell in Tennessee, was involved in an accident while operating a MRZR-4 Lightweight Tactical All-Terrain Vehicle ("MRZR"). (Doc. No. 180 ¶ 1). The MRZR was depicted in the Complaint (accurately, apparently, based on Defendant's lack of objection thereto) as follows



(Doc. No. 1 at 4, Fig. 1). The MRZR appears to have a total of four seats: a driver's seat, a front-passenger seat, and two seats in the back.

Following basic driver training, Plaintiff began vehicle "familiarization" on the sniper range. (*Id.* at ¶ 56). The sniper range was used for training because the trails normally used were temporarily closed. (*Id.* at ¶ 57). The sniper range is over 1,000 feet long and contains large dirt berms at 100-meter intervals. (*Id.* at ¶ 3). The tops of the various berms are roughly level with one another, but the underlying ground slopes downwards, meaning the height (from the base to the top) of the successive berms continually increases as the underlying ground slopes downward. (*Id.* at ¶ 4).

During the familiarization process, Chief Warrant Officer Fuchs drove a lap around the sniper range with Plaintiff and Cadet Truax as passengers, heading north along a gravel path to the

top of the range, before turning south and carefully navigating the berms. (*Id.* at ¶ 58). During this drive, Fuchs never caused the MRZR's wheels to leave the ground, and he did not travel over a speed of around 25 to 30 miles per hour. (*Id.* at ¶ 59; Doc. No. 186 ¶ 129). Fuchs then exited the MRZR, allowed Plaintiff to take over as the driver, and told Plaintiff to "take it easy." (Doc. No. 180 at ¶ 60). Cadet Truax moved to occupy the front-passenger seat. (*Id.* at ¶ 61). The seat cushions were mounted to seat bases,[2] and the driver's seat (unlike the front-passenger seat) had a battery pack underneath the seat cushion.

After taking over the driver's role, Plaintiff drove north, made a U-turn beyond the 200-meter berm, and then came to a stop. (*Id.* at ¶ 63). From his stopped position, Plaintiff accelerated, the MRZR lost contact with the ground, and when it landed both seat bases had broken in a similar location. (*Id.* at ¶¶ 64, 65). Plaintiff and Defendant dispute how the vehicle lost contact with the ground. Defendant claims that Plaintiff accelerated to 40 miles per hour and (intentionally) launched the MRZR into the air, causing all four wheels to leave the ground. (*Id.* at ¶¶ 64, 65). Plaintiff disputes that he reached 40 miles per hour and characterizes the vehicle leaving the ground as "inadvertent[]." (*Id.*) Though there is a dispute over the exact circumstances, it is undisputed that the MRZR left the ground and that both seat bases were thereafter broken in similar locations.[3] Plaintiff contends that the breaking of the seat base of the driver seat caused his seat to drop into (*i.e.*, to bottom out on) the battery compartment located directly under his seat, causing an impact to Plaintiff. (*Id.* at ¶ 7). As a result of the accident, Plaintiff suffered a spinal injury and is now a

---

[2] Apparently, what the parties have called a "seat base" is what is sometimes called a "seat bottom," *i.e.*, the horizontal part of the seat, where the sitter's derriere rests.

[3] The precise sense or manner in which the seat bases were "broken" is not clear to the Court, but suffice it to say that each party refers to the seat bases as being "cracked" in some way.

paraplegic. (Doc. No. 1 at 1).[4] Cadet Truax, who was in the front-passenger passenger seat at the time of the accident, was uninjured. (Doc. No. 180 at ¶ 8).

B.  <u>The development of the MRZR</u>

The parties dispute many of the facts surrounding the development, testing, and sale of the MRZRs and the extent of the United States government's involvement in the development process generally and in the specific development of the seat base.

███████████████████████████████████████████

███████████████████████████████████████████ ▪

███████████████████████████████████ ▪ ████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

---

[4] Herein, citations to page numbers are to the page numbers electronically placed on the document by the Clerk's office and not necessarily to the page number assigned by the party that drafted and filed the document, which may be different.

[5] In briefing, the parties use both USSOCOM and SOCOM to reference the United States Special Operations Command. For consistency, the Court has chosen to use the abbreviation USSOCOM.

▎███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████



████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████

The parties also dispute the circumstances surrounding the design of the seat base, the component of the MRZR primarily at issue in this case (as this was the component that cracked and, according to Plaintiff at least, thereby caused his injury). ████████████████

██████████████████████████████████  ██████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████  ████████████████████████████████████

---

██ ████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
██████████████████████████████████████████
  ██████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
███████████████
  ███████████████████████████████████████████████████████
████████████████████████████████████████████████████



███████████████████████████████████████████████████████████

████████████████████

█████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████

The parties dispute the levels of testing the MRZR underwent and why it underwent the levels of testing it did. █████████████████████████████████████████████

██████████████████████████████████████████████████████ ████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████████ ████████████████

█████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

---

■ ███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
██████████████████████████████████

■ ███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
████████████████████████████████



████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████ ██ ███

    ████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████

The parties also dispute why and when the seat-base material was changed.[15] ████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

─────────────────────────────

■ ███████████████████████████████████████████████████
████████████████████████████

■ ███████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
██████████████████████



██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████ ▪

The MRZR seat base undisputedly was labeled incorrectly. ████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

─────────────────────────

▪ ████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
█████████████████████████████████████████████████



████████████████████████

████████████████████████

██████

C.  Procedural Background

Plaintiff's Complaint sets forth counts asserting:  i) negligence (based on the design and/or manufacture of the MRZR and failure to warn), ii) strict liability (based on the design and/or manufacturing of the MRZR and failure to warn), iii) breach of warranty (based on, *inter alia*, a failure to warn), and iv) the unconstitutionality (under the Tennessee and U.S. Constitutions)  of Tennessee laws limiting punitive damages. (Doc. No. 1). Plaintiff requests relief in the form of compensatory and punitive damages. (*Id.* at 26).

Contemporaneously with the present Motion, Defendant filed a motion to dismiss under Fed. R. Civ. P. 12(b)(1) on the basis of the political question doctrine. (Doc. No. 165). The Court previously denied the motion to dismiss, finding that the political question doctrine did not apply.[20]

---

[20] In ruling on the 12(b)(1) factual dispute, the Court used the statements of undisputed facts filed contemporaneously with the presently pending Motion for Summary Judgment to ascertain the applicable facts as set forth in the factual section. (Doc. No. 192 at 2 n.2). The Court therein described the appropriate standard for reviewing facts on a 12(b)(1) factual attack:

> Where there is a factual attack on the subject-matter jurisdiction of the court under Fed. R. Civ. P. 12(b)(1), no presumptive truthfulness applies to the complaint's allegations; instead, the court must weigh the conflicting evidence to arrive at the factual predicate that subject-matter jurisdiction does or does not exist. *Gentek Bldg. Products, Inc.*, 491 F.3d at 330. "[T]he district court has considerable discretion in devising procedures for resolving questions going to subject matter jurisdiction[.]" *Ohio Nat. Life Ins. Co. v. United States*, 922 F.2d 320, 327 (6th Cir. 1990). The Sixth Circuit has noted that:

>> The factual attack, however, differs greatly for here the trial court may proceed as it never could under 12(b)(6) or Fed. R. Civ. Pro. 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy

(Doc. Nos. 192, 193). Thereafter, Defendant filed a Motion for Certificate of Appealability (Doc. No. 194) seeking permission to appeal the ruling on the motion to dismiss to the Sixth Circuit. The Court denied Defendant's motion. (Doc. No. 199). Meanwhile, the pending Motion has remained pending and is ripe for adjudication.

## LEGAL STANDARD

Summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). In other words, even if genuine, a factual dispute that is irrelevant or unnecessary

---

> itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.
>
> *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996) (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 890 (3d Cir. 1977)).
>
> In making its decision, the district court has wide discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve jurisdictional facts. *Gentek Bldg. Products, Inc.*, 491 F.3d at 330; *see also Nichols v. Muskingum Coll.*, 318 F.3d 674, 677 (6th Cir. 2003) ("In reviewing a 12(b)(1) motion, the court may consider evidence outside the pleadings to resolve factual disputes concerning jurisdiction, and both parties are free to supplement the record by affidavits."); *Cunningham v. Rapid Response Monitoring Servs., Inc.*, 251 F. Supp. 3d 1187, 1192 (M.D. Tenn. 2017) (discussing *Gentek*).

(Doc. No. 192 at 5-6). In analyzing the motion to dismiss, the Court determined the facts (and the inferences and conclusions to draw from the facts) under the appropriate 12(b)(1) standard. Herein, by contrast, the Court reviews the evidence (and the inferences to be drawn in the non-movant's favor from the evidence) under the appropriate summary judgment standard and does not resolve any factual disputes or weigh the evidence, beyond determining merely whether a genuine dispute of fact exists.

under applicable law is of no value in defeating a motion for summary judgment. *See id.* at 248. On the other hand, "summary judgment will not lie if the dispute about a material fact is 'genuine[.]'" *Id.*

A fact is "material" within the meaning of Rule 56(c) "if its proof or disproof might affect the outcome of the suit under the governing substantive law." *Anderson*, 477 U.S. at 248. A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Harris v. Klare*, 902 F.3d 630, 634-35 (6th Cir. 2018).

The party bringing the summary judgment motion has the initial burden of identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Pittman v. Experian Information Solutions, Inc.*, 901 F.3d 619, 627-28 (6th Cir. 2018). If the summary judgment movant meets that burden, then in response the non-moving party must set forth specific facts showing that there is a genuine issue for trial. *Id.* at 628.

A party asserting that a fact cannot be or genuinely is disputed—*i.e.*, a party seeking summary judgment and a party opposing summary judgment, respectively—must support the assertion by citing to materials in the record, including, but not limited to, depositions, documents, affidavits or declarations. Fed. R. Civ. P. 56(c)(1)(A). In reviewing a motion for summary judgment, this court must view the evidence in the light most favorable to the non-moving party. *Tlapanco v. Elges*, 969 F.3d 638, 647 (6th Cir. 2020) (quoting *Anderson*, 477 U.S. at 248). Likewise, the court should view the facts and draw all reasonable inferences in favor of the non-moving party. *Pittman*, 901 F.3d at 628. Credibility judgments and weighing of evidence are improper. *Hostettler v. College of Wooster*, 895 F.3d 844, 852 (6th Cir. 2018). As noted above, where there is a genuine dispute as to any material fact, summary judgment is not appropriate. *Id.* The court determines whether sufficient evidence has been presented to make the issue of fact a

proper jury question. *Id.* The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient to survive summary judgment; rather, there must be evidence upon which the jury could reasonably find for the non-moving party. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

On a motion for summary judgment, a party may object that the supporting materials specified by its opponent "cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Upon such an objection, the proponent of the supporting material must show that the material is admissible as presented or explain how it could be presented in a form that would be admissible. *Thomas v. Haslam*, 303 F. Supp. 3d 585, 624 (M.D. Tenn. 2018); *Mangum v. Repp*, 2017 WL 57792 at *5 (6th Cir. Jan. 5, 2017) (citing Fed. R. Civ. P. 56(c) advisory committee's note to 2010 amendment).

## DISCUSSION

In the Memorandum in Support of its Motion, Defendant makes four arguments as to why this Court should grant summary judgment in its favor (in whole or in part, depending on the argument): 1) the government-contractor defense immunizes Defendant from state-law product-liability claims (which would immunize Defendant from all of Plaintiff's claims); 2) Plaintiff lacks evidence that the MRZR's seat base was defective as claimed, and there is no indication of causation; 3) regarding Plaintiff's manufacturing-defect claim, there is no evidence that the seat base was not manufactured in accordance with proper design specifications, and there is no indication of causation; and 4) the record offers no support that Defendant acted intentionally or recklessly, and so punitive damages are not available. (Doc. No. 169). Defendant also asserts that two of Plaintiff's claims (breach of warranty and failure to warn) have been abandoned. (*Id.*). In his Response, Plaintiff claims that Defendant is not entitled to summary judgment on any of his

claims, because there are genuine disputes of material fact, and that he has not abandoned any of his claims. (Doc. No. 179).

The Court will discuss each of Defendant's arguments.

A.  The Government Contractor Defense[21]

The Supreme Court first recognized the government contractor defense in *Boyle v. United Techs. Corp.*, 487 U.S. 500, 508 (1988). The Supreme Court summarized the defense as:

> Liability for design defects in military equipment cannot be imposed, pursuant to state law, when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States. The first two of these conditions assure that the suit is within the area where the policy of the "discretionary function" would be frustrated—*i.e.*, they assure that the design feature in question was considered by a Government officer, and not merely by the contractor itself. The third condition is necessary because, in its absence, the displacement of state tort law would create some incentive for the manufacturer to withhold knowledge of risks, since conveying that knowledge might disrupt the contract but withholding it would produce no liability.

*Id.* at 513.[22] "The three conditions serve to ensure that the defense operates to immunize the contractor only where the government has actually participated in discretionary design decisions,

---

[21] This defense is also often referred to as the military contractor defense. *Snell v. Bell Helicopter Textron, Inc.*, 107 F.3d 744, 746 (9th Cir. 1997). There are some small distinctions between the "government contractor" defense and the "military contractor" defense in some circuits, none of which are relevant to the case at hand.

[22] The government contractor defense as explained in *Boyle* applies to strict liability, negligence, and breach of warranty claims arising out of design or manufacturing defects. *E.g.*, *In re Aircraft Crash Litig. Frederick, Md.*, May 6, 1981, 752 F. Supp. 1326, 1336 (S.D. Ohio 1990), *aff'd sub nom. Darling v. Boeing Co.*, 935 F.2d 269 (6th Cir. 1991) (collecting cases); *Snell*, 107 F.3d at 748 (analyzing design-defect, manufacturing-defect, and failure-to-warn claims). A standard slightly different from *Boyle* is applied in the context of failure to warn claims. *In re Welding Rod Prod. Liab. Litig.*, No. 1:03-CV-17000, 2004 WL 1179454, at *10 (N.D. Ohio May 21, 2004) (discussing the differences and the standard in a failure to warn case). However, this Court has explained that the traditional *Boyle* analysis can still be the proper analysis in the context of certain failure-to-warn claims:

either by designing a product itself or approving specifications prepared by the contractor." *Harduvel v. Gen. Dynamics Corp.*, 878 F.2d 1311, 1316 (11th Cir. 1989). Essentially, as indicated by *Boyle* itself, in order to make out a government contractor defense, "[a] government contractor may assert immunity when the government approved 'reasonably precise' specifications; the equipment conformed to those specifications; and the supplier/contractor warned of those equipment dangers that were known to the supplier/contractor, but not to the government." *Linfoot v. McDonnell Douglas Helicopter Co.*, No. 3:09-CV-00639, 2016 WL 524445, at *4 (M.D. Tenn. Feb. 9, 2016).

"The defendant bears the burden of proving each element of the defense." *Oliver v. Oshkosh Truck Corp.*, 911 F. Supp. 1161, 1169 (E.D. Wis. 1996), *aff'd*, 96 F.3d 992 (7th Cir.

---

A slightly different analysis generally applies to defendants invoking the government contract defense against failure to warn claims, as opposed to design defect claims. However, the traditional *Boyle* analysis seems most appropriate here. Failure to warn claims in the context of government contractor disputes typically relate to whether the contractor should be liable for inadequate warnings intended for the equipment users. *See Tate v. Boeing*, 55 F.3d 1150 (6th Cir. 1995). In those situations, the government contractor defense applies only when the government exercised discretion in approving the content of the warning to users; the contractor provided warnings that conformed to the government-approved warnings; and the contractor warned the government of the dangers in the equipment's use about which the contractor knew but the government did not. *Id.* Here, Plaintiffs' allegations do not concern the contents of warnings to the pilots of the MELB helicopters. Plaintiffs instead seek to hold MDHC liable for failing to adequately warn the Army that the crush box was rendered unsafe by the addition of the VWS as part of the MELB reconfiguration. This failure to warn claim therefore bears a greater logical resemblance to a design defect claim. For that reason, the Court applies the government contractor defense articulated in *Boyle* rather than the augmented version set forth in *Tate*.

*Linfoot v. McDonnell Douglas Helicopter Co.*, No. 3:09-CV-00639, 2016 WL 524445, at *4 (M.D. Tenn. Feb. 9, 2016) (footnote and citation to record omitted). ██████████████████████████████ ██████████████████████████████████████████████████ Therefore, the Court will apply the standard *Boyle* test to determine whether this claim, along with Plaintiff's other claims, is subject to the government contractor defense.

1996); *see also Ruth v. A.O. Smith Corp.*, No. 1:04-CV-18912, 2005 WL 2978694, at *7 (N.D. Ohio Oct. 11, 2005) ("Critically, to prevail on the military contractor defense, it is the defendants who have to show that the government did exercise its discretion—the plaintiffs do not have to show the government did not exercise its discretion."). "In the context of a motion for summary judgment, the defendant must show that there is no genuine issue of material fact as to each element of the defense." *Oliver*, 911 F. Supp. at 1169; *Willis v. BW IP Int'l Inc.*, 811 F. Supp. 2d 1146, 1157 (E.D. Pa. 2011) ("The Court emphasizes that, in order to prevail on summary judgment as to the government contractor defense, Defendants would have to show the absence of a genuine issue of material fact as to all three (3) prongs of the *Boyle* test.").[23] "Further, the question of whether the military contractor defense prevails in a given case is a question of fact. Ultimately, then, unless reasonable minds could not disagree, 'whether the facts establish the conditions for the [military contractor] defense is a question for the jury.'" *Ruth*, 2005 WL 2978694, at *7 (quoting *Boyle*, 487 U.S. at 514).

Therefore, to prevail on the government contractor defense at this stage, Defendant must show that there is no genuine dispute as to the material facts, *i.e.*, no genuine dispute that each of the three prongs of the *Boyle* test is satisfied.

### 1. Approval of reasonably precise specifications

Under the first requirement of *Boyle*, Defendant must establish that the United States government has used its discretion to approve reasonably precise specifications. 487 U.S. at 513. The Sixth Circuit has held that the first element of *Boyle* is satisfied where there is a "continuous

---

[23] This is because the defendant bears the ultimate burden to establish this defense. By contrast, to obtain summary judgment on a plaintiff's claim, a defendant-movant needs to show the absence of a genuine issue of material fact as to just one of the elements of the claim because the *plaintiff* bears the ultimate burden to establish the claim.

back and forth review process regarding the design in question" between the government and the contractor. *Tate v. Boeing Helicopters*, 55 F.3d 1150, 1154-55 (6th Cir. 1995) (quotation marks and citation omitted). This process must constitute more than a "rubber stamp" from the government. *Id.* at 1154 (citation omitted); *see also Trevino v. Gen. Dynamics Corp.*, 865 F.2d 1474, 1480 (5th Cir. 1989) ("When the government merely accepts, without any substantive review or evaluation, decisions made by a government contractor, then the contractor, not the government, is exercising discretion. A rubber stamp is not a discretionary function; therefore, a rubber stamp is not 'approval' under *Boyle*."). "On the other hand, the government is not required to instruct the manufacturer in how to make the product. The government need not actually participate in the process of design at all—simple approval of a manufacturer's design is acceptable. While blind acceptance of a design does not constitute sufficient government discretion, only government review and approval of the specifications is required by the case law, and acceptance after genuine consideration and informed judgment satisfies the first prong of *Boyle*." *Ammend v. BioPort, Inc.*, 322 F. Supp. 2d 848, 877–78 (W.D. Mich. 2004) (quoting *Haltiwanger v. Unisys Corp.*, 949 F. Supp. 898, 902–903 (D.D.C.1996) (internal quotation marks and citation omitted)).

"[T]he courts look at the particular design feature to review whether the government had been involved in a continuous give and take with respect to that feature." *Stecyk v. Bell Helicopter Textron, Inc.*, No. 94-CV-1818, 1996 WL 153555, at *5 (E.D. Pa. Apr. 1, 1996) (discussing *Tate*); *Tate*, 55 F.3d at 1155 (discussing the development of the specific tandem hook at issue); *Snell v. Bell Helicopter Textron, Inc.*, 107 F.3d 744, 747 (9th Cir. 1997) ("While the district court found, and the summary judgment record produced by [Defendant] establishes that the government was significantly involved in and approved specifications for the design of the entire helicopter, the

court's ruling did not address, as *Boyle* requires, whether the design feature in question, *i.e.*, the drive shaft and its components, was considered by a Government officer, and not merely by [Defendant] itself. Where government approval of reasonably precise specifications has been found as a matter of law, the evidence established exercise of judgment by the government in the design of the particular feature at issue." (cleaned up) (internal citation and quotation omitted)).

Despite this line of cases indicating that the relevant analysis is the specific design element at issue, Defendant argues that the Court should focus not on the *specific* design element (the seat base) but rather on the *overall* design process generally. (Doc. No. 185 at 1). According to the out-of-circuit cases cited by Defendant:

> The law indicates that general government approval of an overall design is sufficient, and the defense can apply even where the manufacturer retains significant control over the design features in question. *Carley v. Wheeled Coach*, 991 F.2d 1117, 1125 (3d Cir. 1993). The government need not actually participate in the process of design at all—simple approval of a manufacturer's design is acceptable. "[T]he first government contractor defense criterion is met by a showing of government approval of the overall design. It is not necessary that there be 'continuous back and forth discussions . . . regarding the inclusion or exclusion of the specific design deficiency.' " *Maguire v. Hughes Aircraft Corp.*, 725 F. Supp. 821, 823–24 (D.N.J. 1989) (quoting *Wilson v. Boeing Co.*, 655 F. Supp. 766, 773 (E.D. Pa. 1987)); *see also Stout v. Borg–Warner Corp.*, 933 F.2d 331 (5th Cir. 1991). While approval is more likely to be established when the government is involved in design and development, the agency need not dictate any particular design specifications, and only approval after the fact is required. *See Kleemann v. McDonnell Douglas Corp.*, 890 F.2d 698, 701 (4th Cir. 1989); *Dowd v. Textron, Inc.*, 792 F.2d 409, 412 (4th Cir. 1986).

*Haltiwanger*, 949 F. Supp. at 902–03; *see also Crespo v. Unisys Corp.*, No. 94-2339 (WGB), 1996 WL 875565, at *9 (D.N.J. June 21, 1996). However, the Court is not convinced that it should look at the general development of the MRZR, as opposed to the specific design of the MRZR's seat base; after all, the Sixth Circuit's opinion in *Tate* focused on the specific component part at issue. *Tate*, 55 F.3d at 115; *see also Stecyk*, 1996 WL 153555, at *5. But the Court can forego deciding the proper scope of the inquiry because, as discussed below, many disputes of fact exist pertaining

to both the specific development of the seat base and the general development of the MRZR—disputes that indicate a genuine dispute of material fact exists regarding whether the first prong of the *Boyle* test is satisfied under either scope. The Court will first discuss the evidence related specifically to the seat base and then discuss the evidence related more generally to the MRZR.

████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████



Therefore, assuming alternatively that the proper scope is broader than just the seat base at issue, there are a multitude of genuine disputes of fact regarding whether USSOCOM was involved in the design of the seat base and of the MRZR. This means, in turn, that there is a genuine dispute of material fact regarding whether the first *Boyle* prong is satisfied. By itself, this means that Defendant is not entitled to summary judgment based on the government contractor defense; as the Court previously noted, Defendant bears the burden of proving each element of the government contractor defense and thus, to obtain summary judgment based on that defense must show that there is no genuine issue of material fact as to each element of the defense. *Oliver*, 911 F. Supp. at 1169.

   2. <u>Other *Boyle* requirements and conclusion</u>

As suggested above, because the Court finds that Defendant has not shown the first requirement under the *Boyle* test is met in this case, the Court need not discuss the remaining two requirements. *See e.g.*, *Snell*, 107 F.3d at 748 (finding issue of material fact on the first *Boyle* element, finding the second element therefore moot, and finding "no purpose" in addressing the third element); *Willis*, 811 F. Supp. 2d at 1156 (finding issue of material fact on the first *Boyle* element, finding "no reason to consider the second prong," and noting that "[d]espite the fact that all elements of the *Boyle* test must be met for Defendants to prevail on their motions for summary judgment based on the government contractor defense . . . here Defendants have not met the first element of the *Boyle* test, [but] for the sake of providing guidance on this often repeated issue, this Court will consider the third element of the *Boyle* test"); *Jorden v. Ensign-Bickford Co.*, 20 S.W.3d 847, 853 (Tex. App. 2000) ("Because we conclude the first element of the government contractor defense has not been conclusively established, we also conclude [Plaintiff] did not conclusively prove the second element of the government contractor defense-that the MK 141s conformed to approved government specifications. Absent proof of the approved specifications, it is not possible to conclude as a matter of law that the MK 141s at issue met those specifications.").[25]

The Court notes that at this stage it finds not that the government contractor defense is necessarily inapplicable to this case, but rather merely that Defendant has not shown (based on material facts not genuinely in dispute) that the defense is applicable as a matter of law. *See Snell*, 107 F.3d at 750 (9th Cir. 1997) ("We do not decide here whether [Defendant] may be entitled to the military contractor defense. We decide only that on the record before us the defense has not

---

[25] To the extent that one or both of these cases hedge their bets as to whether the other elements must be reached after finding a genuine dispute of material fact on the first element of the *Boyle* test, the Court declines to do likewise. The other elements need not be reached here, given the Court's determination as to the first element.

been established as a matter of law, *i.e.*, that a reasonable jury would not be required to find that the three prongs of the defense had been proved by a preponderance of the evidence with respect to each of [Plaintiff's] claims."). Therefore, for the reasons discussed herein, the Court will deny Defendant's Motion as it pertains to the government contractor defense.

B. Tennessee products liability law (design and manufacturing defects)[26]

Plaintiff's Complaint asserts several claims under products liability law, namely i) negligence (based on the design and/or manufacture of the MRZR and failure to warn), ii) strict liability (based on the design and/or manufacturing of the MRZR and failure to warn), and iii) breach of warranty (which includes a failure to warn). (Doc. No. 1). Defendant attacks Plaintiff's design and manufacturing theories, both of which focus on the seat base, asserting a lack of

---

[26] In his Response to the Motion, Plaintiff states that he does not concede that Tennessee law governs this suit. Plaintiff states that "[u]nder a proper choice of law analysis, the law of Minnesota, [Defendant's] home state, and location where all the relevant design decisions were made, has the most significant interest and could very well control." (Doc. No. 179 at 30). Under the so-called *Erie* doctrine, a federal court sitting in diversity applies the substantive law of the state in which it sits. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938) (holding that a federal court sitting in diversity is bound to follow the law of the forum state); *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 566 (6th Cir. 2001) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). Tennessee substantive law therefore governs in this Court. Part of Tennessee's substantive law for this Court to apply is Tennessee's choice-of-law rules, which theoretically could direct the Court to apply the underlying law (*i.e.*, the law excluding choice-of-law rules) of some other state. *See Standard Fire Ins. Co. v. Ford Motor Co.*, 723 F.3d 690, 692–93 (6th Cir. 2013). Despite Plaintiff's contention in his Response, Defendant has advanced no argument under Minnesota law. Plaintiff has also argued its Motion solely under Tennessee law, though he has also included footnotes to show the similarity of Minnesota law. The Court finds that Defendant has waived the argument that Minnesota law applies with respect to the instant Motion. For purposes of this Motion, therefore, the Court will analyze Plaintiff's claims under Tennessee law rather than Minnesota law, and it will revisit choice of law later in this litigation if properly raised by either party.

causation. (Doc. No. 169).[27] Plaintiff argues that genuine disputes of material fact preclude summary judgment. (Doc. No. 179).

This Court has previously explained Tennessee products liability law:[28]

> To prevail on a claim under the Tennessee Products Liability Act ("TPLA"), Tenn. Code Ann. § 29–28–101 et seq., "a plaintiff must prove that the product was defective and/or unreasonably dangerous." *Tatham v. Bridgestone Americas Holding, Inc.*, 473 S.W.3d 734, 749 (Tenn. 2015). This is because the Act specifically provides that "[a] manufacturer or seller of a product shall not be liable for any injury to a person or property caused by the product unless the product is determined to be in a defective condition or unreasonably dangerous at the time it left the control of the manufacturer or seller." Tenn. Code Ann. § 29–28–105(a).

> What constitutes a "product liability action" is broadly defined to include "all actions based upon the following theories: strict liability in tort, negligence, breach of warranty (express or implied), breach of or failure to discharge a duty to warn or instruct, misrepresentation, concealment or non-disclosure, or under any substantive legal theory in tort or contract whatsoever." *Id.* § 102(6). "Accordingly, whether a plaintiff's claim against a product manufacturer is couched in negligence, strict liability, or breach of warranty, Tennessee courts have held that the plaintiff must establish that the product was defective or unreasonably dangerous at the time the product left the control of the manufacturer." *Stockton v. Ford Motor Co.*, 2017 WL 2021760, at *3 (Tenn. Ct. App. May 12, 2017) (collecting cases) . . .

> Under the TLPA, " '[d]efective condition' means a condition of a product that renders it unsafe for normal or anticipatable handling and consumption," and "

---

[27] Defendant notes that the Complaint also makes allegations regarding the MRZR's suspension and restraint harness, but it suggests that Plaintiff has since abandoned those claims. (Doc. No. 169 at 23 n.7). Plaintiff does not mention the MRZR's suspension or restraint harness in its Response, focusing instead solely on the seat base. Therefore, the Court considers Plaintiffs' claims regarding the MRZR's suspension and restraint harness, as brought in the Complaint, to be abandoned. *See Brown v. VHS of Michigan, Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013) ("This Court's jurisprudence on abandonment of claims is clear: a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment.").

[28] The Court notes that privity between the plaintiff and the defendant is not required to bring such causes of action. Tenn. Code Ann. § 29-34-104 ("In all causes of action for personal injury or property damage brought on account of negligence, strict liability or breach of warranty, including actions brought under the Uniform Commercial Code, privity shall not be a requirement to maintain such action."); *see also Motley v. Fluid Power of Memphis, Inc.*, 640 S.W.2d 222, 226 (Tenn. Ct. App. 1982); *Galloway v. Big G Express, Inc.*, No. 3:05-CV-545, 2008 WL 80262, at *4 (E.D. Tenn. Jan. 7, 2008). Additionally, neither party raises any issues or concerns regarding privity in this case.

'[u]nreasonably dangerous' means that a product is dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics[.]" Tenn. Code Ann. § 29–28–102(2) & (8). "Th[is] consumer expectation test assesses 'whether the product's condition poses a danger beyond that expected by an ordinary consumer with reasonable knowledge.' " *Tatham v. Bridgestone Americas Holding, Inc.*, 473 S.W.3d 734, 750 (Tenn. 2015) (quoting *Ray ex rel. Holman v. BIC Corp.*, 925 S.W.2d 527, 529 (Tenn. 1996)). "Put another way, '[u]nder this test, a product is not unreasonably dangerous if the ordinary consumer would appreciate the condition of the product and the risk of injury.' " *Id.*

*Jones v. WFM-Wo, Inc.*, 265 F. Supp. 3d 775, 778 (M.D. Tenn. 2017). The Tennessee Court of Appeals has further explained how a plaintiff can show that a product is defective:

A product is defective if it is not fit for the ordinary purposes for which such articles are sold and used . . . Establishing this element requires only proof, in a general sense and as understood by a layman, that 'something was wrong' with the product. As a rule the mere occurrence of an accident is not sufficient to establish that the product was not fit for ordinary purposes. However, additional circumstantial evidence, such as proof of proper use, handling or operation of the product and the nature of the malfunction, may be enough to satisfy the requirement that something was wrong with it. . . . Further, a defective condition can also be proven by the testimony of an expert who has examined the product or who offers an opinion on the products design.

*Browder v. Pettigrew*, 541 S.W.2d 402, 405–06 (Tenn. 1976) (quoting *Scanlon v. General Motors Corp.*, 65 N.J. 582, 326 A.2d 673 (1974) (cleaned up)); *see also King v. Danek Med., Inc.*, 37 S.W.3d 429, 435 (Tenn. Ct. App. 2000) ("In a product liability claim, the fact that a plaintiff is injured is not proof of a defect in the product. Likewise, the failure or malfunction of the device, without more, will not make the defendant liable. A plaintiff must show that there was something wrong with the product, and trace the plaintiff's injury to the specific defect."); *Pride v. BIC Corp.*, 218 F.3d 566, 580 (6th Cir. 2000). Causation between the defect and the injury is also required. *King*, 37 S.W.3d at 435; *see also In re Aredia & Zometa Prod. Liab. Litig.*, No. 3:06-MD-1760, 2009 WL 2496932, at *1 (M.D. Tenn. Aug. 13, 2009).

"[A] defect in a product, as well as any other material fact, may be proven by direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence." *Browder*, 541 S.W.2d at 405. "If plaintiff provides sufficient evidence to create a question of fact that the product was dangerous, then the general rule in Tennessee is that the issue of whether a product is defective or unreasonably dangerous is one for the jury, and the jury is to employ its own sense of whether the product meets ordinary expectations as to its safety under the circumstances presented by the evidence." *Jones*, 265 F. Supp. 3d at 779 (quoting *Jackson v. Gen. Motors Corp.*, 60 S.W.3d 800, 805–06 (Tenn. 2001) (cleaned up)). Causation is also typically a question for the jury, unless uncontroverted facts (and inferences to be drawn from the uncontroverted facts) make it clear that all reasonable persons must agree on the same outcome. *E.g.*, *McClenahan v. Cooley*, 806 S.W.2d 767, 775 (Tenn. 1991); *Hale v. Ostrow*, 166 S.W.3d 713, 718 (Tenn. 2005); *Payne v. Novartis Pharm. Corp.*, 767 F.3d 526, 528 (6th Cir. 2014); *Humphrey v. Yobonta*, No. 3:19-CV-00782, 2021 WL 780731, at *5 (M.D. Tenn. Mar. 1, 2021) (Richardson, J.).

1. Design defect

Defendant argues that Plaintiff has not shown that a specific design defect caused his injury and so Plaintiff's claims fail to the extent based on his design-defect theory. (Doc. No. 169 at 22). Defendant claims that until recently, Plaintiff's sole design-defect theory throughout litigation has been that the seat base was defectively designed because it should have been made of a stronger material (instead of the plastic material used), which would have kept it from breaking. (*Id.* at 23). Defendant asserts that Plaintiff has relatively recently and improperly changed his theory as to which component caused his injury. ████████████████████████████████
████████████████████████████████████████████████████████



████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

---

[30] Under Tennessee law, causation-in-fact in synonymous with but-for causation. *See, e.g.*, *Gallina v. Concord EFS, Inc*., No. 06-02338 MA/V, 2007 WL 9705974, at *5 (W.D. Tenn. Apr. 27, 2007) ("Causation in fact requires a showing that the injury would not have occurred but for the defendant's negligent conduct." (citing *Kilpatrick v. Bryant*, 868 S.W.2d 594, 598 (Tenn. 1993)). The Supreme Court recently explained such causation as follows: "That form of causation is established whenever a particular outcome would not have happened 'but for' the purported cause. In other words, a but-for test directs us to change one thing at a time and see if the outcome changes. If it does, we have found a but-for cause." *Bostock v. Clayton Cty., Georgia*, 140 S. Ct. 1731, 1739 (2020) (citation omitted).

██████████████████████████████████████████████

███████████████████████████████████████ ■ Therefore, the Court does

not accept Defendant's contention that Plaintiff abandoned his theory of the seat base material

constituting a design defect by also presenting evidence of how the cracked seat base allowed a

collision with the battery compartment.

So the question is whether Defendant has removed all genuine dispute as to the existence

of either a design defect in the seat base or causation of Plaintiff's injuries (or both). Aside from

the above arguments, Defendant has not done anything to show that there is no genuine dispute of

material fact as to causation. Therefore, the Court finds that Defendant has not shifted the burden

to Plaintiff on this issue.

Alternatively, had the burden shifted, the Court would have to accept all evidence in the

light most favorable to the non-moving party (Plaintiff) on a motion for summary judgment.

*Tlapanco*, 969 F.3d at 647; *Pittman*, 901 F.3d at 628. The evidence regarding the seat base

indicates that a genuine dispute of material fact exists regarding the existence (or non-existence)

of a design defect, which precludes summary judgment for Defendant.[32] *See e.g.*, *Pritchett v.*

---

[31] As the Supreme Court recently noted, "[o]ften, events have multiple but-for causes." *Bostock*, 140 S. Ct. at 1739. Sometimes, each one of multiple but-for causes reflects tortious or otherwise wrongful conduct by a party. "So, for example, if a car accident occurred *both* because the defendant ran a red light *and* because the plaintiff failed to signal his turn at the intersection, we might call each a but-for cause of the collision." *Id.* But in a given case there could be multiple but-for causes, only one of which reflects wrongful conduct by a party. ████████████████████████

█████████████████████████████████████████████

■█████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████████

*Cottrell, Inc.*, 512 F.3d 1057, 1066 (8th Cir. 2008) ("Appellants have presented evidence to create a material question of fact regarding whether their injuries were caused by an unreasonably dangerous design defect[.]"); *G'Francisco v. GoFit, LLC*, No. 3-13-1084, 2015 WL 1481460, at *4 (M.D. Tenn. Mar. 31, 2015) ("There are too many factual questions surrounding this Product, this accident, Defendants' duties, Plaintiff's use or misuse, the alleged warnings, and proximate cause to grant Defendants' Motion. The credibility of witnesses and the weight to be given the evidence and testimony must be determined by the factfinder.").

For the reasons discussed, the Court will deny summary judgment to Defendant on Plaintiff's design-defect claims.

2. <u>Manufacturing defect</u>

Defendant argues that ██████████████████████████████████ ████████████ is not a manufacturing defect. (Doc. No. 169 at 27). ██████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████ ██ ███████ Because Defendant has

_____

██ ████████████████████████████████████████████████████

████████████████

pointed to evidence supporting its position and indicating that Plaintiff lacks sufficient evidence to succeed on this claim, the Court finds that Defendant has shifted the burden to Plaintiff to show a genuine dispute of material fact on the causation issue.

Plaintiff responds that there is a material dispute of fact on this issue and so summary judgment would be improper. (Doc. No. 179 at 39-40). ████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
█████████████████████████████████████████████

Despite these arguments, Plaintiff has not shown a genuine dispute of material fact regarding causation in regards to his manufacturing defect claim. ████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
██████████████████████████████████████████████

As indicated above in a footnote, when analyzing whether something constitutes a but-for cause, the factfinder should ask itself whether "a particular outcome would not have happened 'but for' the purported cause" and see whether the outcome changes with the purported but-for cause removed from the situation. *Bostock v. Clayton Cty., Georgia*, 140 S. Ct. 1731, 1739 (2020) (citation omitted). Here, in the summary judgment context, the Court asks whether Plaintiff has

shown that the factfinder (the jury) could reasonably find that the outcome (his injuries) would have changed (not occurred) absent the incorrect stamping of the seat base. ███████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████

    █████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████████████████

    ██████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████████████████████

    Therefore, Plaintiff has failed to show the Court a genuine dispute of material fact regarding causation with respect to his manufacturing defect claim.

Thus, the Court will grant summary judgment to Defendant on this claim.

C.  Allegedly Abandoned Claims: Failure to Warn and Breach of Warranty

Defendant states in a footnote in its Memorandum in support of the Motion that Plaintiff

has abandoned his failure-to-warn and breach-of-warranty claims. (Doc. No. 169 at 29-30 n.11).

Defendant argues that there is a "complete absence of proof supporting either claim." (*Id.*). The



In his Response, Plaintiff argues that he has not abandoned either his failure to warn or his

breach of warranty claims and argues that granting summary judgment on either claim would be

inappropriate due to genuine disputes of material fact. (Doc. No. 179 at 36-38). Then, in its Reply,

Defendant argues the merits of these two claims. (Doc. No. 185). Defendant has shown the Court

no reason that it should deem these two claims abandoned, and Plaintiff has evidenced in his

Response that he has not abandoned these claims.[34] Therefore, the Court does not find that these

claims have been abandoned.

---

[34] As previously noted, typically on a motion for summary judgment a claim is abandoned when a plaintiff fails to address the claim in its response, which is not the case here. *See Brown*, 545 F. App'x at 372.

Defendant (in the previously quoted footnote from its Memorandum in support of its Motion) initially claimed that these two claims were abandoned and asserted conclusorily that Plaintiff had shown no evidence on these claims. Defendant did not, in its opening brief, even attempt to (or attempt to point to) evidence suggesting that Plaintiff could not establish a genuine issue of material fact as to these claims—which is precisely its initial obligation as the summary judgment movant. In other words, Defendant was not required to go so far as to prove that Plaintiff had no evidence to support these claims, but it was required to make an initial evidentiary showing that Plaintiff lacked sufficient evidence to raise a genuine issue of material fact as to these claims, and it simply did not do so. Since Defendant did not properly discharge the initial burden it bore on its merits-based argument, the burden never shifted to Plaintiff to show that, despite Defendant's initial showing, he actually could adduce evidence sufficient to raise a genuine issue of material fact (for the jury to ultimately decide). This is because it is only "[w]hen confronted with a properly supported motion for summary judgment [that] the nonmoving party must set forth specific facts showing that there is a genuine issue for trial." *Wallace v. Edward W. Sparrow Hosp. Ass'n*, 782 F. App'x 395, 400 (6th Cir. 2019); *Mitchell v. Chapman*, 343 F.3d 811, 818 (6th Cir. 2003). Not having been confronted with a motion properly supported with respect to these two claims, Plaintiff was not obligated to set forth specific facts (or, to put it more aptly, *asserted* facts supported by evidence) showing a genuine issue for trial.

In addition to the issues discussed with burden shifting on a motion for summary judgment, case law also indicates that a movant cannot raise a new issue in the Reply brief, and such issues will be considered waived due to concerns about fairness to the non-movant, who does not get to reply. *E.g.*, *Peake v. Nat'l City Bank of Michigan*, No. 05-72520, 2007 WL 951417, at *2-3 (E.D. Mich. Mar. 27, 2007) ("An argument raised for the first time in a reply brief is not to be considered

by the court."); *Palazzo v. Harvey*, 380 F. Supp. 3d 723, 730 (M.D. Tenn. 2019) ("Generally speaking, arguments raised for the first time in reply briefs are waived, and this applies both on appeal and to summary judgment motions filed in the trial court." (internal citations omitted)); *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008) ("Raising the issue for the first time in a reply brief does not suffice; reply briefs reply to arguments made in the response brief— they do not provide the moving party with a new opportunity to present yet another issue for the court's consideration. Further the non-moving party ordinarily has no right to respond to the reply brief, at least not until oral argument. As a matter of litigation fairness and procedure, then, we must treat [such issues] as waived." (quotation omitted) (discussed in *Palazzo*)). Though here Defendant did mention the claims in its Memorandum in support of its Motion, Defendant did not make any merits-based arguments on these two claims until its Reply brief. Plaintiff was therefore not given an opportunity to respond to Defendant's merits-based arguments on these two claims, and Plaintiff could not present a genuine dispute of material fact in response to Defendant's arguments that were first presented in the Reply. Therefore, the same issues of fairness are present in this case as those cases that find that arguments made for the first time in a Reply brief are waived.

For the reasons discussed, Defendant has not done enough, in merely asserting that these two claims have been abandoned, to shift the burden to Plaintiff for purposes of summary judgment. Therefore, the Court finds that summary judgment would be inappropriate on Plaintiff's failure to warn and breach of warranty claims.

D.  Punite Damages

"Punitive damages may only be awarded if the claimant proves by clear and convincing evidence that the defendant against whom punitive damages are sought acted maliciously,

intentionally, fraudulently or recklessly." Tenn. Code Ann. § 29-39-104(a)(1). Tennessee courts

"restrict the awarding of punitive damages to cases involving only the most egregious of wrongs."

*Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 900 (Tenn. 1992). The Tennessee Supreme Court has

defined the four categories warranting punitive damages as:

> A person acts intentionally when it is the person's conscious objective or
> desire to engage in the conduct or cause the result. *Cf.* T.C.A. § 39–11–302(a)
> (1991) (criminal definition of "intentional"). A person acts fraudulently when (1)
> the person intentionally misrepresents an existing, material fact or produces a false
> impression, in order to mislead another or to obtain an undue advantage, and (2)
> another is injured because of reasonable reliance upon that representation. *See First
> Nat'l Bank v. Brooks Farms*, 821 S.W.2d 925, 927 (Tenn.1991). A person acts
> maliciously when the person is motivated by ill will, hatred, or personal spite. A
> person acts recklessly when the person is aware of, but consciously disregards, a
> substantial and unjustifiable risk of such a nature that its disregard constitutes a
> gross deviation from the standard of care that an ordinary person would exercise
> under all the circumstances. *Cf.* T.C.A. § 39–11–302(c) (1991) (criminal definition
> of "reckless").

*Id.*

In a case cited by Plaintiff, this Court denied summary judgment on a claim for punitive

damages when the plaintiffs claimed that the defendant deliberately chose not to fix a problem

with a tire, despite knowing the likelihood that serious harm would result. *Frausto v. Cooper Tire

& Rubber Co.*, No. 3-12-0761, 2014 WL 581724, at *3 (M.D. Tenn. Feb. 13, 2014), *vacated sub

nom. Nieves Frausto v. Cooper Tire & Rubber Co.*, No. 3-12-0761, 2014 WL 12928244 (M.D.

Tenn. Feb. 21, 2014). The Court reasoned in *Frausto* that "[w]hether Defendant's conduct was

malicious, intentional, fraudulent or reckless remains a question for the jury. . . What Defendant

knew, when it knew it, and what it did in response to any information are also questions of fact,

precluding summary judgment on Plaintiffs' punitive damages claims." *Id.* at *4.

Addressing the categories of punitive damages, Defendant argues that Plaintiff cannot be

entitled to punitive damages in this case ████████



The Court has previously discussed thoroughly the genuine disputes of material fact that remain in connection with Plaintiff's various claims (except with respect to his manufacturing defect claim). Just as there are various genuine disputes precluding summary judgment as to Plaintiff's other claims (except with respect to his manufacturing defect claim), there is a genuine issue as to whether Defendant acted recklessly with respect to the design of the seat base. When ruling on a defendant's motion for summary judgment, the Court must view the evidence in the light most favorable to the plaintiff and must

draw reasonable inferences regarding the facts from such evidence in the plaintiff's favor. In so doing, the Court finds that there is evidence that could support an award of punitive damages based on at least reckless conduct. *See Tlapanco*, 969 F.3d at 647. Therefore, the Court finds that Plaintiff has established a genuine dispute of material fact that Defendant acted intentionally, fraudulently, or recklessly; this question should be answered by the jury.

Therefore, the Court will deny Defendant's Motion as it pertains to Plaintiff's punitive damages claim.

## CONCLUSION

As is not uncommon, here a defendant-movant makes various arguments that conceivably could get consequential traction with the jury. But that is not to say that, with respect to one or more claims, (i) Defendant met its initial burden to point to evidence of record suggesting the absence of a genuine issue of material fact; and (ii) Plaintiff failed to meet his resulting burden to show that actually there is a genuine issue of material fact. Failing both of these things, Defendant cannot obtain summary judgment as to a particular claim. And with respect to only one claim did Defendant meets its initial burden under Rule 56 and then see Plaintiff fail to meet his resulting burden.

Thus, the Court will deny Defendant's Motion in part and grant Defendant's Motion in part. The Court will deny Defendant's Motion with respect to Count One (for negligence) to the extent based on the design of the MRZR and failure to warn, Count Two (for strict liability) to the extent based on the design of the MRZR and failure to warn, Count Three (for breach of warranty) based on, *inter alia*, a failure to warn, and Count Four (asserting the unconstitutionality, under the Tennessee and U.S. Constitutions, of Tennessee laws limiting punitive damages). The Court will grant Defendant's Motion with respect to Counts One and Count Two to the extent based on the manufacture of the MRZR.

An appropriate order will be entered.

_Eli Richardson_

ELI RICHARDSON
UNITED STATES DISTRICT JUDGE